VOLBRECHT (Harold) and wife, Respondents, v. STATE HIGHWAY COMMISSION, Appellant.

VOLBRECHT (Melvin) and wife, Respondents, v. SAME, Appellant.

*June 9—July 1, 1966.*

642

For the appellant the cause was argued by *Charles A. Bleck,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondents there was a brief by *Bogue & Sanderson* of Portage, and oral argument by *David Bogue.*

BEILFUSS, J. The issues on this appeal concern the admissibility of evidence concerning the presence of fill dirt in valuing the land before and after the taking and the accuracy of the instruction to the jury in this regard.

The state argues that before evidence of a mineral deposit may be admitted into evidence in a condemnation case a foundation must be laid to show that the presence of the mineral deposit affects the fair market value of the land. *Cameron Development Co. v. United States* (5th Cir. 1944), 145 Fed. (2d) 209; *United States v. Land in Dry Bed of Rosamond Lake, Cal.* (D. C. Cal. 1956), 143 Fed. Supp. 314; *Hoy v. Kansas Turnpike Authority* (1959), 184 Kan. 70, 334 Pac. (2d) 315; *Petition of Mackie* (Mich. 1966), 141 N. W. (2d) 312; *New York Central R. Co. v. Maloney* (1922), 234 N. Y. 208, 137 N. E. 305; *Sgarlat Estate v. Commonwealth* (1960), 398 Pa. 406, 158 Atl. (2d) 541; 29A C. J. S., Eminent Domain, pp. 736, 737, sec. 174; 4 Nichols, Eminent Domain (3d ed. 1962), pp. 408–412, sec. 13.22.

The state further argues that the necessary foundation consists of showing the existence of a market or the reasonable likelihood of a future market, citing the authorities noted above. That market must be one apart from that created exclusively by the taking itself or the contemplated improvement. *J. A. Tobin Construction Co. v. United States* (10th Cir. 1965), 343 Fed. (2d) 422; *Water Commissioners v. Lawrence* (1842), 3 Edw. Ch. (N. Y.) 552.

Respondents do not dispute these statements of the law. On the contrary, they agree that the foregoing statements are accurate rules in the existent law. They do not agree, however, that they failed to lay a proper foundation or that the value of the fill dirt was created *exclusively* by the taking.

Therefore we are confronted by the question of whether a sufficient foundation was laid to allow admission of evidence on the value of the fill dirt.

In the *Rosamond Lake Case, supra,* at page 322, the district court stated "that the landowner must make a showing of some sort of market, poor or good, great or small, for the commodity in question before the quantity and price of the commodity or substance may be presented to the jury to be used as a factor in the expert's opinion testimony."

On direct examination Harold Volbrecht testified to prior sales of fill dirt and sand and gravel:

"*Mr. Bogue:* Did you sell both gravel and dirt fill during the last several years?

"*The Witness: A.* I have.

"*Q.* And to whom did you sell? *A.* The County few years back took out quite a bit of sand dirt that they used for snow prevention in the wintertime. In fact, they made one deep hole right adjacent to the roadbed on 82 that's not over three rods from where the road is—the new location—south of it.

"I haven't sold a great deal of gravel; I sold some; neighbors around built silos—small amounts."

On cross-examination the state inquired further into sales of fill dirt and sand and gravel:

"*Q.* Now, how much fill dirt did you sell this year, Mr. Volbrecht? *A.* This year I haven't sold any.

"*Q.* How much fill did you sell last year? *A.* I don't know as I sold any last year.

"*Q.* How much the year before that? *A.* I just don't know what year the County was in there. I haven't got

my files here. They bought fill dirt from me since I have owned the farm.

"Q. And when was the last time the County bought fill dirt from you? A. I don't know that unless I was home and looked it up in the book. It wasn't the last couple years, I know that.

"Q. Was it five years ago? A. It could be.

"Q. Could be ten years ago? A. No, it wouldn't be ten I don't think.

". . .

"Mr. Bleck: Dollar wise, Mr. Volbrecht, how much fill dirt have you sold in the last ten years? A. I wouldn't know until I checked my records. It probably would be under $500."

Additional testimony from a neighbor of the Volbrecht's who had a sand and gravel pit indicates that there was a general market for sand and gravel and fill dirt in the area:

"Q. Now, have you found any sale of fill as well as sale of gravel? A. Oh, yes, they hauled out fill dirt. The County's been hauling out quite a bit of fill dirt in summer."

In addition to this testimony of the general market for fill dirt in the area and of the sales by the Volbrechts, albeit minor, there was testimony that the fill dirt on the Volbrecht farms was of exceptionally good quality.

We deem the testimony sufficient as a foundation for evidence on the value of the land with the fill dirt in it. And once the foundation is adequately laid and the evidence on value presented, the question of how much the presence of the fill dirt in the land enhances the value of the land is for the jury.

"[E]xcept in cases where the matter is so clear that it becomes a question of law it is generally a question for the jury to determine whether the proposed factor underlying in part the opinion of the expert as to the fair market value, is one which would have reasonably been considered by the willing buyer and the willing seller."

*United States v. Land in Dry Bed of Rosamond Lake, Cal., supra,* at page 322. (Emphasis deleted.)

We therefore hold that a sufficient foundation for the introduction of evidence on enhancement of the value of the land taken due to the presence of fill dirt in that land was laid, and a jury question on the extent of the enhancement was presented, insofar as it affected the market value of the farms immediately preceding the taking.

The state argues that fill dirt is not a mineral deposit, but the very recent case of *Petition of Mackie, supra,* specifically applied legal rules regarding condemnation of land containing valuable mineral deposits to facts involving only fill dirt. In any event, the argument is simply one of semantics and is of no import since a condemnee is entitled to recover damages for anything contained in or on the land taken which enhances its value. "When a tract of land taken by eminent domain contains ore, stone, coal, sand, gravel, peat, loam, oil, gas or other valuable deposits constituting part of the realty, the existence of these features can be taken into consideration in determining the compensation so far as they affect the market value of the land." 4 Nichols, Eminent Domain (3d ed. 1962), p. 402, sec. 13.2. The law is concerned with the enhancement of the land's value, not the peculiar nature of the factor enhancing the value.

This court has recently stated that ". . . it seems reasonable to conclude that the legislature intended that every element which affects fair market value should be considered. This is in accord with the great weight of authority. See 4 Nichols, Eminent Domain (3d ed. 1962), p. 3 *et seq.,* sec. 12.1, where the author states (p. 4) that, 'All elements of value which are inherent in the property merit consideration in the valuation process.' " *Ken-Crete Products Co. v. State Highway Comm.* (1964), 24 Wis. (2d) 355, 359, 360, 129 N. W. (2d) 130.

The state also contends that the instruction on fill dirt was erroneous in that it allowed the jury to award dam-

ages for enhancement to the land created exclusively by the condemnation. The court instructed the following on fill dirt:

"During the course of this trial evidence has been received as to the value of fill dirt and timber on the Volbrecht property. Whether this affected the fair market value of the properties as they stood on February 4, 1965, is for you to determine from all of the evidence in the case. The value of the fill dirt and timber should not be considered independently of the farms. The fill dirt and timber should not be considered as so much potential merchandise and should not be valued as such. The land must be valued as land with the fill dirt and timber given such consideration as you determine that it affects the fair market value of the whole properties at the time of the taking, which is February 4, 1965.

"In considering the value of fill dirt you will take into consideration the general demand for such dirt in the area and not limit your consideration to its use on this particular project."

The second paragraph of the instruction is erroneous insofar as it implies that damages may be awarded for value created by the taking and its prospective use in the improvement. Just compensation is what the owner has lost, not what the condemnor has gained. 4 Nichols, Eminent Domain (3d ed. 1962), p. 64, sec. 12.21. However, in viewing the instructions as a whole and the jury verdicts as compared to the proof, we cannot conclude that the jury was misled or that a different result on a new trial is probable. The erroneous instruction was not prejudicial.

*By the Court.*—Judgments affirmed.