CITY OF MILWAUKEE POST No. 2874
VETERANS OF FOREIGN WARS OF the UNITED STATES,
Plaintiff-Appellant,

v.

REDEVELOPMENT AUTHORITY OF
the CITY OF MILWAUKEE, Defendant-Respondent.†

Court of Appeals

*No. 2006AP2866. Oral argument September 18, 2007.
—Decided January 23, 2008.*

2008 WI App 24

(Also reported in 746 N.W.2d 536.)

† Petition to review filed.

520

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Hugh R. Braun* of *Godfrey, Braun & Frazier, LLP.* of Milwaukee. There was oral argument by *Hugh R. Braun*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Grant F. Langley*, city attorney by *Gregg C. Hagopian*, assistant city attorney and *Charles P. Graupner* of *Michael Best & Friedrich, LLP* of Milwaukee. There was oral argument by *Gregg C. Hagopian*.

Before Curley, P.J., Wedemeyer and Kessler, JJ.

¶ 1. WEDEMEYER, J. The City of Milwaukee Post 2874 Veterans of Foreign Wars of the United States (VFW) appeals from a judgment dismissing its claim that the Redevelopment Authority of the City of Milwaukee's (RACM) condemnation of the building within which the VFW had pre-paid for a long-term lease without compensation for the lease was unconstitutional. Because the "unit rule" as applied in this case is unconstitutional, we reverse the judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. The property involved in this case was the eleven-story hotel building located at 2601 West Wis-

consin Avenue, which housed the VFW headquarters in 5250 square feet on the ground floor. In 1942, the VFW owned the building located on the property and used it as its post headquarters. In 1961, it conveyed the land and improvements to Towne Metropolitan, Inc., who constructed the eleven-story hotel. In exchange for the conveyance, the VFW obtained a ninety-nine-year lease, with the option to renew for another ninety-nine years. Under the leasehold, the VFW paid $1.00 annually and the lessor would pay all real estate taxes, all utilities, and cover maintenance on the property.

¶ 3. The property first operated as a Hilton Hotel and then as a Holiday Inn. In 1986, Towne sold the property to Marquette University, which used it as a dormitory. In 1994, the property was sold to the Maharishi Vedic University for $600,000. Both sales required the new owners to assume the responsibility to comply with the VFW's lease. The Maharishi never occupied the building after its acquisition.

¶ 4. In February 1998, RACM held a public hearing to consider creating a redevelopment district for the area including the parcel of land at 2601 West Wisconsin Avenue. Following the hearing, RACM issued a relocation order pursuant to WIS. STAT. § 32.05(1) (1999–2000).[1] After locating three comparable properties, RACM made a jurisdictional offer in the amount of $440,000 for the property, listing both Maharishi and the VFW as owners. The award included both the hotel and the adjoining parking lot located at 601 North 26th Street, which were owned solely by the Maharishi. In December 2001, the Honorable Michael P. Sullivan divided the $440,000 between the Maharishi and the

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

VFW, allocating $140,000 to the former and $300,000 to the VFW for the value of its leasehold interest.

¶ 5. The VFW appealed the adequacy of the award to the Condemnation Commission. The Maharishi did not join the appeal. The Commission requested instruction from the trial court as to how to value the property. The trial court instructed the Commission to value the property using the "unit rule." The VFW petitioned for leave to appeal this determination, which we initially denied, but subsequently granted. We concluded that the unit rule should be used in the scheduled hearing before the Condemnation Commission, but we declined to address the constitutional issue of whether this application violated the Wisconsin Constitution. *See City of Milwaukee Redev. Auth. v. Veterans of Foreign Wars Post 2874*, 2003 WI App 225, 267 Wis. 2d 960, 671 N.W.2d 717, unpublished slip op. (Sept. 30, 2003).

¶ 6. Subsequently, a hearing was conducted before the Condemnation Commission in December 2004 and it found the value of the property to be $425,000, which was $15,000 less than the initial award. The VFW appealed the damage award to the trial court under WIS. STAT. § 32.05(10) (2003–04). On July 13, 2005, the VFW moved the trial court for an order declaring the application of the unit rule in this case unconstitutional. The trial court denied the motion and that case was tried to a jury in September 2006. The issue considered by the jury was the value of the property. The jury returned a verdict that the hotel building at 2601 West Wisconsin Avenue had no value. Judgment was entered against the VFW in the amount of $387,348.24, which included the $300,000 it had already been paid, plus accumulated interest and costs. The VFW now appeals from that judgment.

■■■■■■■■■■

## DISCUSSION

¶ 7. The VFW argues in this appeal that: (1) the unit rule is unconstitutional as applied to the particular facts and circumstances of this case; (2) RACM should be estopped from claiming that the building has less value than the $566,000 tax assessment; and (3) this case should be reversed and remanded for a new trial based on cumulative evidentiary errors. Because we conclude that the unit rule as applied is unconstitutional, we reverse and remand so that the VFW has an opportunity to prove the value of its leasehold before the Condemnation Commission. Based on this disposition, it is not necessary for us to address the other two issues raised. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938). The dispositive issue herein involves a constitutional issue, which we review independently. *See Schilling v. State Crime Victims Rights Bd.*, 2005 WI 17, ¶ 12, 278 Wis. 2d 216, 692 N.W.2d 623.

¶ 8. WISCONSIN CONST. art. I, § 13 provides: "The property of no person shall be taken for public use without just compensation therefor." Yet, that is exactly the result of the judgment in this case. The jury found that the fair market value of the building at 2601 West Wisconsin Avenue was $0. The trial court ruled that based on the application of the unit rule, the VFW was not entitled to any compensation for the taking. Such a result violates the Wisconsin Constitution and cannot be affirmed. We begin our analysis with a brief review of the history of the unit rule.

■■■■■

¶ 9. The unit rule "requires that real estate be valued in respect to its gross value as a single entity as if there was only one owner." 4–13 NICHOLS, EMINENT DOMAIN § 13.01[16] § 13–28. There are two parts to the

rule: "(1) there can be no separate valuation of improvements or natural attributes of the land; and (2) the manner in which the land is owned or the number of owners should not affect the value of the land." *Id.* The first part appears to have its genesis in

> the common law theory that anything that was attached to a freehold was annexed to and considered to be a part of it. If fixtures such as those in question here are attached to the real estate, they are treated as real estate in determining the total award. In computing the total award, they are considered to enhance the value of the fee. However, in condemnation proceedings, in apportioning the award, the fixtures are treated as personal property to be credited to the tenants.

*Green Bay Broad. Co. v. Redevelopment Auth.*, 116 Wis. 2d 1, 12, 342 N.W.2d 27 (1983), *modified by* 119 Wis. 2d 251, 349 N.W.2d 478 (1984). The second part, sometimes referred to as the "undivided basis rule," applies when there are different interests or estates in the property acquired by condemnation. *Id.*

¶ 10. In simple terms, the unit rule has been used in condemnation cases to determine the fair market value of the property "as a single entity as if there were but one owner." *Id.* (citing *Milwaukee & Suburban Transp. Corp. v. Milwaukee County*, 82 Wis. 2d 420, 448, 263 N.W.2d 503 (1978)). In *Appleton Water Works Co. v. Railroad Commission of Wisconsin*, 154 Wis. 121, 142 N.W. 476 (1913), the court applied the first of the two aspects of the "unit rule" (although not by name) to a taking of a public utility:

> [The] value of the plant and business is an indivisible gross amount. It is not obtained by adding up a number of separate items, but by taking a comprehensive view of each and all of the elements of property, tangible and intangible, including property rights, and

considering them all not as separate things, but as inseparable parts of one harmonious entity, and exercising the judgment as to the value of that entity.

*Id.* at 148. Thus, the rule was applied without calling it the unit rule. In *Luber v. Milwaukee County*, 47 Wis. 2d 271, 177 N.W.2d 380 (1970), the court also does not discuss the "unit rule" *per se;* rather, the court was presented with the issue of whether WIS. STAT. § 32.19(4) (i.e., net rental losses caused by the proposed public land acquisition are compensable in eminent domain proceedings) was unconstitutional. *Luber,* 47 Wis. 2d at 274. While the appellant argued that § 32.19(4) was an arbitrary and unreasonable limitation on just compensation, the respondent contended that compensation should be awarded only for the physical property taken and that "consequential" damages are to be suffered in legal silence. *Luber,* 47 Wis. 2d at 276. The *Luber* court acknowledged that " 'just compensation' has never been construed as requiring payment for all injuries imposed upon persons or property by acts of government." *Id.* at 277 (citation and one set of quotation marks omitted). However, the court concluded that "one's interest in rental income is such as to deserve compensation under the 'just compensation' provision of the Wisconsin Constitution." *Id.* at 279. "Just compensation is what the owner has lost, not what the condemnor has gained." *Id.* (citing *Volbrecht v. State Highway Comm'n,* 31 Wis. 2d 640, 647, 143 N.W.2d 429 (1966)). Because land taken for redevelopment is often commercial or industrial, "incidental damages are very apt to occur and in some cases exceed the fair market value of the actual physical property taken." *Id.* at 280. Denying recovery for other than the fair market value of the physical property actually taken is unjust. *Id.*

¶ 11. In *Milwaukee & Suburban Transport Corp.*, 82 Wis. 2d 420, the court explicitly used the term "unit rule." It stated: "Under the 'unit rule of damages,' improved real estate is required to be valued as a single entity. Buildings and improvements are not valued in isolation from the market value of the land, but are considered only to the extent that they enhance the value of the land." *Id.* at 448 (quoting 4 Nichols, Eminent Domain (3d ed.), §§ 13.11, 13.11[2], pp. 13–8, 13–13 to 13–18). In that case, Milwaukee County condemned the operating assets of the Milwaukee & Suburban Transportation Corporation ("MSTC"). *Id.* at 426. At the taking, the MSTC was a franchised monopoly-type public utility. *Id.* at 433. The issue in *MSTC* pertinent to this discussion was whether the trial court erred in submitting a multiple-question verdict to the jury. *Id.* at 448. The county argued that the verdict be limited to a single question, which would ask the jury the fair market value of the property at the date of the taking. *Id.* The court held that "[t]he requirement that property be valued as an integrated and comprehensive entity does not mean that the individual components of value may not be examined or considered in arriving at an overall fair market value . . . . This approach does not contradict the 'unit rule' . . . ." *Id.* at 449. The structure of the verdict was consistent with the unitary approach because the first question asked the fair market value of the property taken and the remaining questions merely asked what calculations had gone into the jury's determination of overall value. *Id.* at 450. The court cited *Appleton Water Works Co.* as further support for the unit rule valuation method of a public utility.

¶ 12. In *Maxey v. Redevelopment Authority of Racine*, 94 Wis. 2d 375, 384, 288 N.W.2d 794 (1980), Maxey was the owner of a ninety-nine-year lease, and at

the time of the taking, forty years were left on Maxey's leasehold interest. The Condemnation Commission made a total compensation award of $350,000 to the persons having an interest in the property, including Maxey, two mortgagees of his leasehold interest, and the seven lessors who were owners of the fee. *Id.* at 382. However, "[t]he [c]ircuit [c]ourt found that, because of provisions in the lease between Maxey and the lessors, Maxey's interest in the lease terminated upon the taking of the property; and, accordingly, neither he nor his mortgagees were entitled to share in the proceeds. *Id.* at 383. The lease stated, in pertinent part:

> If all the rights, titles, interests and estates of both the lessors and lessees in said demised premises and buildings and improvements thereon shall be sold in the exercise of the right of Eminent Domain in condemnation proceedings . . . [*s*]*uch condemnation shall terminate the further liabilities of both the lessors and lessees under this lease* . . . .

*Id.* at 400 (emphasis added).

¶ 13. First, the *Maxey* court concluded that under ordinary circumstances, a lessee is entitled to some portion of the condemnation award. "Under Wisconsin law, a lessee with a lease for more than one year is a joint owner with the lessor of real property." *Id.* at 388 (citation omitted). A lessee has an interest in the property and is entitled to compensation when that interest is completely taken in a condemnation proceeding. *Id.* at 400. The unit rule requires that condemnation awards be based on the value of the property as a whole as if there were only one owner. *Id.* at 401. As a result, a lessee's interest is not considered separately from the other "owners' " interests; rather, the value of the lessee's leasehold is only relevant in determining the amount of the condemnation award apportioned to

him. "A leasehold is normally valued as the difference between the rental value of the premises at the time of taking and the rent due the lessors during the unexpired term." *Id.* at 401. The compensation award should be thus "apportioned to the lessor for the taking of his reversionary interest and to the lessee for the taking of his leasehold." *Id.* However, "[w]here the leasehold is relatively long and rental values have substantially increased since the inception of the lease term, the lessee's share may exhaust the entire award." *Id.*

¶ 14. Second, the court held that a lessee may be barred from sharing in the proceeds of a condemnation award by a properly drawn lease provision. *Id.* Thus, the issue posed to the court in *Maxey* was whether the language of the lease is sufficiently explicit to cause a forfeiture of the lessee's normal right to share in the compensation award. *Id.* at 402. "Wisconsin law . . . abhors a forfeiture unless stated in most explicit terms." *Id.* at 403. If the terms of a lease are susceptible to two different constructions, the lease should be construed as not creating a forfeiture. *Id.* The court held that "the lease provision merely terminates the respective liabilities of the lessors and the lessee," *id.* at 402, and did not cause a forfeiture of Maxey's right to share in the compensation award.

¶ 15. In *Green Bay Broadcasting Co.,* the Redevelopment Authority appealed the condemnation commission award because it alleged that the Broadcasting Company's (a lessee) fixtures were over-valued. *Id.,* 116 Wis. 2d at 8–9. The court held that in such a situation, an appellant is required to appeal from the whole award. *Id.* "The fact that there was an objection to the method of calculation or of the valuation of the components of the gross award . . . does not vitiate the condemnor's appeal from the gross award." *Id.* at 14.

Rather, "[t]he appeal from the gross award was appropriate—indeed necessary under the unit rule—to attack the correctness of the constituent components that went into the gross award." *Id.* at 15. The court rejected the Authority's assertion that the unit rule does not apply in Wisconsin, and affirmed its acceptance in Wisconsin jurisprudence. *Id.* at 11–12.

¶ 16. In *Redevelopment Authority of Green Bay v. Bee Frank, Inc.*, 120 Wis. 2d 402, 355 N.W.2d 240 (1984), Bee Frank was a lessee who owned immovable fixtures in a condemned commercial building. The issue in *Bee Frank* was whether the court can separate the amount attributable to immovable trade fixtures from the purchase price of the land and building in a condemnation award, for the purpose of determining entitlement to litigation expenses. *Id.* at 407. The court held that an award for a tenant's immovable fixtures constitutes a separate award for the purposes of applying WIS. STAT. § 32.28(3)(d) (award of litigation expenses to condemnee). *Bee Frank*, 120 Wis. 2d at 413. "While the unit rule of damages is a controlling principle in eminent domain actions, its application in determining entitlement to litigation expenses . . . contravenes . . . public policy . . . ." *Id.* at 414. The court relied heavily upon the public policy arguments in *Green Bay Broadcasting Co.*

¶ 17. In *Van Asten v. DOT*, 214 Wis. 2d 135, 138, 571 N.W.2d 420 (Ct. App. 1997), the plaintiffs owned and leased property to Rollins Leasing Corp. *Id.* at 138. The lease contained a condemnation clause, which provided in part:

> If the entire leased premises . . . [are] taken . . . [by] eminent domain . . . this lease shall terminate as of the date of such taking; and . . . the LESSOR will reimburse the LESSEE for twelve months rent . . . . [T]he LESSOR shall receive the entire award, including all amounts

paid for the taking of the land, the taking or damage to the buildings or other improvements.

*Id.* at 138–39.

¶ 18. The threshold issue in *Van Asten* was whether the language of the condemnation clause was explicit enough to warrant a forfeiture of the lessee's normal right to share in the condemnation award. *Id.* at 141. The court held that the condemnation clause was controlling. *Id.* at 142–43. "We view the condemnation clause as nothing more than a negotiated reapportionment of risk between a lessor and a lessee. The condemnation clause was a carefully bargained paragraph . . . ." *Id.* at 144. The court cited *Green Bay Broadcasting Co.* and *Maxey* as authorities on the unit rule, and distinguished *Bee Frank* from this case, because *Bee Frank* did not involve an agreement, i.e., condemnation clause. *Van Asten*, 214 Wis. 2d at 145.

¶ 19. Finally, in *Hoekstra v. Guardian Pipeline, LLC*, 2006 WI App 245, ¶ 5, 298 Wis. 2d 165, 726 N.W.2d 648, the appellant alleged that the trial court erroneously excluded evidence of damage to trees that were either removed and/or transplanted as a result of installing a gas pipeline. The court held that the appellant's argument requires the valuation of a property's components separately from the fair market value, which is precisely what the unit rule prohibits. *Id.*, ¶ 43. And as the court reiterates, "the 'unit rule' approach to assessing severance damages is well-established under Wisconsin law and 'its acceptance is beyond question.' " *Id.*, ¶ 43 (citing *Green Bay Broad. Co.*, 116 Wis. 2d at 11).

¶ 20. What we can discern from reviewing the history of the "unit rule" in Wisconsin are the following. First, our supreme court has determined that the unit

rule applies in this state. Accordingly, we are bound by that determination. Second, lessees with leases for more than one year have a property interest in the real estate in which they lease for purposes of receiving compensation in an eminent domain action. Third, forfeitures are frowned upon absent an explicit contractual agreement between the parties that the lessee forfeits all rights upon condemnation. Fourth, in certain circumstances, the lessee of an unexpired lease terminated by condemnation has the right to prove the value of the lease and is entitled to the proportionate share of an award.

¶ 21. In applying these principles to the instant case, we note that the unique facts and circumstances here create a scenario that has not yet been addressed. The VFW conveyed real property in exchange for a very valuable leasehold—$1.00 per year for ninety-nine years to include all maintenance, taxes, utilities and remodeling costs for 5250 square feet of the building. The VFW, through its conveyance, obtained minimal rent and free occupancy costs provided in a long-term lease. Moreover, the VFW's lease did not contain a forfeiture clause upon condemnation. Finally, the jury rendered a judgment wherein the fair market value of the building as a single unit was found to be worthless. Yet, it is undisputed that the leasehold interest is of great monetary value.

¶ 22. So, the crux of the appeal is the following. Strict application of the unit rule results in no compensation to the VFW. If the real estate was not worthless, the VFW, as a long-term leaseholder, would have the opportunity to prove the value of the leasehold for purposes of apportioning the condemnation award. Because of the application of the unit rule, however, the VFW was prohibited from proving the value of its lease

to the jury in this case. We conclude that the application of the unit rule under these [e]xceptional circumstances is unconstitutional. *See Mississippi & Rum River Boom Co. v. Patterson*, 98 U.S. 403, 408 (1878) ("[e]xceptional circumstances will modify [even] the most carefully guarded rule . . . ."); *United States v. 6.45 Acres of Land*, 409 F.3d 139, 147–48 (3rd Cir. 2005) (in some instances, a departure from the unit rule may be necessary to avoid grossly unjust results).

¶ 23. The "just compensation" provision of the Constitution is one of two express constitutional limitations on the power of eminent domain. "While it confirms the State's authority to confiscate private property, the text of the Fifth Amendment imposes two conditions on the exercise of such authority: the taking must be for a 'public use' and 'just compensation' must be paid to the owner." *Brown v. Legal Found.*, 538 U.S. 216, 231–32 (2003). "The fundamental right guaranteed by the Fourteenth Amendment is that the owner shall not be deprived of the market value of his property under a rule of law which makes it impossible for him to obtain just compensation." *McCoy v. Union Elevated R.R. Co.*, 247 U.S. 354, 365 (1918).

> [W]hen market value has been too difficult to find, or when its application would result in manifest injustice to owner or public, courts have fashioned and applied other standards . . . . [T]he dominant consideration always remains the same: What compensation is 'just' both to an owner whose property is taken and to the public that must pay the bill?

*United States v. Commodities Trading Corp.*, 339 U.S. 121, 123 (1950).

¶ 24. Although Wisconsin jurisprudence has consistently applied the unit rule in determining fair market value for property in eminent domain actions, this is the first time that such application would result in the manifest injustice of the prepaid long-term leaseholder receiving nothing for its interest in the property. It would not receive *any* compensation, let alone *just* compensation. Such would result in an unconstitutional taking, which this court "abhors." *See Maxey*, 94 Wis. 2d 403.

¶ 25. The situation in this case involves a set of particular facts where designating fair market value as the *sole* measure of compensation is inappropriate. *See United States v. 564.54 Acres of Land*, 441 U.S. 506, 512 (1979). Although fair market value is commonly used in eminent domain cases, it "is not an absolute standard nor an exclusive method of valuation. The constitutional requirement of just compensation derives as much content from the basic equitable principles of fairness as it does from technical concepts of property law." *United States v. Fuller*, 409 U.S. 488, 490 (1973) (citations and internal quotation marks omitted).

¶ 26. As Justice Oliver Wendell Holmes once stated in addressing this same issue: "[T]he question is, [w]hat has the owner lost? not, [w]hat has the taker gained?" *Boston Chamber of Commerce v. City of Boston*, 217 U.S. 189, 195 (1910). In the instant case, the taker gained, according to the jury in this case, a building that was worthless when measured against fair market value. But what has the VFW lost? The jury was not allowed to consider the value of the leasehold because of the unit rule. Such a result is inequitable, violates basic principles of fairness, and, as already indicated, is unconstitutional.

¶ 27. We agree with the principles espoused by the Maryland Supreme Court in *City of Baltimore v. Latrobe*, 61 A. 203, 206 (1905), that sometimes the necessities of the particular case require an apparent exception to the general unit rule. We conclude that the necessities of the particular case here require an exception to the general application of the unit rule. We hold that the unit rule as applied to the unique circumstances in this case, render its strict application unconstitutional and would result in a taking of the VFW's property interest without any compensation.

¶ 28. The particular circumstances requiring this conclusion include the fact that the leasehold interest here was a long-term lease; that the lease did not include a forfeiture provision, and that the fair market value of the property was found to be $0. Under these circumstances, the VFW must be afforded an opportunity to prove the value of its separate leasehold interest. We reverse the judgment and remand the matter for a determination of the value of the VFW lease.

*By the Court.*—Judgment reversed and cause remanded.