768 N.W.2d 749 (2009)
2009 WI 84
CITY OF MILWAUKEE POST NO. 2874 VETERANS OF FOREIGN WARS OF the UNITED STATES, Plaintiff-Appellant,
v.
REDEVELOPMENT AUTHORITY OF the CITY OF MILWAUKEE, Defendant-Respondent-Petitioner.
No. 2006AP2866.
Supreme Court of Wisconsin.
Argued February 4, 2009.
Decided July 17, 2009.
*750 For the defendant-respondent-petitioner there were briefs by Grant F. Langley, city attorney and Gregg C. Hagopian, assistant city attorney, Milwaukee, and oral argument by Gregg C. Hagopian.
For the plaintiff-appellant there were briefs by Hugh R. Braun, Melinda A. Hein, and Godfrey Braun & Frazier, LLP, Milwaukee, and oral argument by Hugh R. Braun.
An amicus curiae brief was filed by James S. Thiel, counsel for the Wisconsin Department of Transportation, and Abigail C.S. Potts, assistant attorney general, with whom on the brief was J.B. Van Hollen, attorney general, on behalf of the State of Wisconsin.
*751 ¶ 1 SHIRLEY S. ABRAHAMSON, C.J.
The Redevelopment Authority of the City of Milwaukee seeks review of a published decision of the court of appeals reversing a judgment of the Circuit Court for Milwaukee County, Elsa C. Lamelas, Judge.[1] The judgment of the circuit court was that the Redevelopment Authority is not obligated under Article I, Section 13 of the Wisconsin Constitution to pay any sum to the City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the United States as just compensation for the taking of a parcel of real property in which the VFW held a leasehold interest. The judgment also required the VFW to return a $300,000 award that it had previously received from the Redevelopment Authority and to pay $87,348 in interest and statutory costs.
¶ 2 The court of appeals reversed the judgment of the circuit court and remanded the cause to the circuit court, instructing that "the VFW must be afforded an opportunity to prove the value of its separate leasehold interest" in the condemned property and to receive compensation therefor.
¶ 3 We reverse the decision of the court of appeals and affirm the judgment of the circuit court. We conclude that the unit rule the circuit court applied in the present case does not contravene the VFW's state constitutional right to just compensation.[2]
¶ 4 The circuit court applied the "unit rule" in determining the amount that the Redevelopment Authority had to pay the VFW as just compensation for the taking. Under the unit rule, when property that is held in partial estates by multiple owners is condemned, the condemnor pays the fair market value of an undivided interest in the property rather than the fair market value of each owner's partial interest.[3] Apportionment of the total sum awarded is then made among the owners. Fair market value is the sum a willing purchaser would pay to a willing seller for the property, taking into consideration the uses of the land.[4] The court is not being *752 asked to determine the value of the VFW's leasehold interest or the cost to the VFW of obtaining comparable replacement facilities.
¶ 5 A jury found that the undivided interest in the property condemned in the present case by the Redevelopment Authority had no value at the time of the taking. In accordance with the unit rule and with the jury's verdict, the circuit court entered a judgment declaring that the VFW is not entitled to receive any compensation from the Redevelopment Authority and must reimburse the Redevelopment Authority for money paid to it.
¶ 6 The VFW contends that because the terms of its lease agreement were exceedingly favorable ($1 a year rent for a renewable 99-year term), the VFW's leasehold interest in the condemned property had value notwithstanding the property's lack of value. The VFW argues that under the circumstances of the present case, the unit rule operates to deprive it of just compensation contrary to Article I, Section 13 of the Wisconsin Constitution. The VFW thus challenges the circuit court's judgment on the ground that the circuit court improperly instructed the jury to determine just compensation according to the unit rule. The VFW urges the court to apply the "separate valuation" (or "independent valuation") rule in the present case in lieu of the unit rule to determine the fair market value of the condemned property.[5]
¶ 7 We state the issue on review as follows: If the VFW, which holds a long-term favorable lease, receives no compensation for its leasehold interest under the unit rule, has the VFW's right to just compensation under Article I, Section 13 of the Wisconsin Constitution been violated? In other words, the court is asked to determine whether the application of the unit rule in the present case violates the just compensation clause when the fair market value of the property is zero, rendering the VFW entitled to $0 for the loss of its property interest as a lessee.
¶ 8 We conclude that using the unit rule in the present case to value the whole property to determine the amount of compensation due to the VFW does not violate the just compensation clause. We conclude that the VFW receives just compensation when it receives no compensation for its leasehold interest in a property that has no value. Accordingly, we reverse the decision of the court of appeals reversing the judgment of the circuit court. The judgment of the circuit court is affirmed.
*753 ¶ 9 Inquiring minds might ask how the property at issue in the instant case can be worth nothing. The property is located in the heart of the City of Milwaukee. Even if the building is worthless, isn't the land worth something, and doesn't the VFW as a lessee have an interest in the land upon which the hotel stands?
¶ 10 The answer is that the property as a whole is worth nothing because it is financially infeasible to use the property either by remodeling the hotel building or by demolishing the building to get at the unimproved land. An appraiser testified (and the jury apparently accepted) that the cost of remodeling the building to make it usable would be more than the fair market value of the building and land. Furthermore, the appraiser testified, and the jury again apparently accepted, that although the unimproved land does have value, the value of the land in an undeveloped state is exceeded by the cost of demolishing the building to render the land vacant.

I
¶ 11 The Redevelopment Authority and the VFW have been parties to numerous proceedings relating to the Redevelopment Authority's taking of the property at issue. Many of these proceedings are not directly within the scope of our review and are not fully documented in the circuit court record in the present case. We do not offer a comprehensive account of the history underlying this case.[6] We briefly state the facts and refer to prior proceedings as relevant to the issue on review.
¶ 12 The VFW owned a parcel of real property situated at 2601 West Wisconsin Avenue in the City of Milwaukee that is the subject of the condemnation. It used this property as its headquarters. In 1961, the VFW conveyed the real estate (land and improvements) to Towne Metropolitan, Inc., which built an 11-story, 113,000-square-foot hotel on the land.
¶ 13 In exchange for conveying the real estate, the VFW obtained a 99-year lease for 5,250 square feet on the hotel's ground floor, was amounting to 4.6 percent of the building. The lease provided that the VFW's space in the hotel would be designed for the VFW's purposes and that all leasehold improvements and equipment would be furnished by the lessor. It further *754 provided that the lessor would pay all real estate taxes and would provide heat, air conditioning, maintenance, and periodic redecoration at no cost to the VFW. The lease obligated the VFW to pay an annual rent of only $1 and was renewable for a second 99-year term at the VFW's option.
¶ 14 Under the lease, the VFW was vulnerable, however, to complete loss. The lease was subordinate to any mortgage against the building, allowing a lender to foreclose and wipe out the lease. The VFW's interest reverted to the lessor when the VFW ceased to occupy the building. The lessor had no duty to assure that in the event of eminent domain the building would have adequate value to compensate the VFW for the value of its lease. The lease was silent regarding allocation of the proceeds of condemnation.
¶ 15 Towne Metropolitan sold the real estate in 1986 to Marquette University, which used the hotel as a dormitory. In 1994, Marquette University sold the real estate to Maharishi Vedic University for $600,000. With each sale of the property, the VFW's lease was assigned to the new owner, who had the responsibility of complying with the VFW's lease. Maharishi Vedic University never occupied the hotel after purchasing it but continued to provide utilities and maintenance for the VFW's space.
¶ 16 Although the premises rented by the VFW apparently remained in habitable condition, by the 1990s the hotel as a whole had deteriorated, along with the surrounding neighborhood. In February 1998, the Redevelopment Authority held a public hearing to consider creating a redevelopment district in an area including the real estate at 2601 West Wisconsin Avenue. In January 1999 the Redevelopment Authority created a redevelopment district and issued a relocation order. The Department of Commerce approved the Redevelopment Authority's relocation plan in May 1999.
¶ 17 In January 2001, the Redevelopment Authority issued a jurisdictional offer to purchase the real estate at 2601 West Wisconsin Avenue, including the hotel and any other improvements, as well as an adjoining parking lot owned exclusively by Maharishi Vedic University. After locating comparable properties, the Redevelopment Authority made a jurisdictional offer in the amount of $440,000 as compensation for (1) land and improvements (with the VFW and Maharishi Vedic University as owners), (2) personal property in the hotel owned by Maharishi Vedic University, and (3) an adjoining parking lot owned solely by Maharishi Vedic University.[7]
¶ 18 At the date of taking the only occupant of the building was the VFW; it was not legally permissible to use the rest of the building because of the many building code violations.[8]
¶ 19 The Redevelopment Authority filed a $440,000 award of damages with the clerk of courts for Milwaukee County in February 2001. The Circuit Court for Milwaukee County, Michael P. Sullivan, Judge, divided the $440,000 award between the VFW and Maharishi Vedic University. The VFW received $300,000, less taxes owing. Maharishi Vedic University received $140,000, less taxes owing.
*755 ¶ 20 The VFW appealed the adequacy of the award to the Condemnation Commission in February 2002. Maharishi Vedic University did not join in the appeal. The Condemnation Commission requested instruction from the circuit court about how to value the property. The Circuit Court for Milwaukee County, Michael P. Sullivan, Judge, ordered the Condemnation Commission to determine the value of the property for just compensation according to the unit rule.[9] The Commission determined that the Redevelopment Authority was obligated to pay $425,000 in compensation$15,000 less than the Redevelopment Authority had provided in its award.
¶ 21 The VFW appealed the decision of the Condemnation Commission to the Circuit Court for Milwaukee County. In a pretrial motion, the VFW urged the circuit court not to apply the unit rule when determining the amount of just compensation. The VFW argued that under the circumstances of the present case, application of the unit rule would violate Article I, Section 13 of the Wisconsin Constitution.
¶ 22 The VFW contended that its leasehold interest was extremely valuable because the rent was only $1 per year. One estimate was that the value of the leasehold to the VFW was approximately $50,000 a year. The VFW's appraiser estimated the fair market value of the VFW's leasehold interest at the date of taking, reduced to present value, as approximately $1,200,000, an amount "sufficient to build a facility with 5,250 square feet and maintain it without occupancy costs over the remaining period of the lease."[10] The VFW also argued that it should not be obligated to prove the value of the building that it did not own and did not have an obligation to maintain.
¶ 23 The circuit court (Michael D. Guolee, Judge) denied the VFW's motion seeking that the unit rule not be used, holding that just compensation would be calculated according to the unit rule. The matter then went to a jury trial for a determination of the fair market value of the property taken by the Redevelopment Authority.
*756 ¶ 24 The Redevelopment Authority and the VFW both presented professional appraisers who testified at trial regarding the value of the property. The appraisers also submitted written reports that were introduced as evidence.[11]
¶ 25 The appraisers agreed that a buyer could not extract value from the property by demolishing the hotel structure and starting over with vacant land. The Redevelopment Authority's appraiser testified that the land would be worth about $285,000 if vacant and that it would cost more than $1,000,000 to demolish the hotel building, including $864,000 for asbestos removal. The VFW's appraiser agreed that the land would be worth about $300,000 if vacant, that demolishing the building would mean spending about $850,000 on asbestos removal, and that a prospective owner likely would not be interested in tearing the building down.
¶ 26 The appraisers disagreed, however, about whether the property could yield value if the hotel structure were renovated for some use.
¶ 27 The Redevelopment Authority's appraiser testified that it would not be financially feasible to put the hotel building to any use. He specifically concluded that it would not be financially feasible to renovate the hotel building for use as a retail outlet, an office building, an apartment building, a dormitory, an educational facility, a subsidized housing unit, a full-service hotel, or a limited-service hotel. He concluded that when put to each use, the land and hotel structure would have a negative value because the cost of necessary renovations would outweigh any profits that the property could be expected to yield.
¶ 28 The VFW's appraiser testified that the hotel building could be renovated and put to a use falling within the "general residential" category. His testimony and written report suggested that the building could be renovated and used as an apartment complex, a housing complex for the elderly, a homeless shelter, a mental health facility, a halfway house, or a limited-service hotel. The VFW's appraiser admitted, however, that he had not determined whether any of his proposed uses would be financially feasible.
¶ 29 The appraisers provided dramatically different estimates of the property's total worth. The Redevelopment Authority's appraiser testified that the property had zero market value, because a buyer would be unable to make any money with the property either by razing or renovating the hotel building. The VFW's appraiser fixed the property's value at approximately $1,800,000.
¶ 30 The parties also disagreed about the assessed value of the property for property tax purposes at the time of the taking. The VFW asserted that the assessed value was $566,000. The Redevelopment Authority contended that the assessed value was $1,000. The circuit court concluded that the latter figure was the correct assessed value at the time of the taking.
¶ 31 The circuit court instructed the jury to determine the fair market value of the land and building according to the unit rule as follows:
The entirety of 2601 West Wisconsin Avenue must be valued as a whole unit and a single entity with all of its square *757 footage as of [the date of taking] as if owned by only one owner and as if not leased.
¶ 32 The special verdict required the jury to answer a single question: "What was the fair market value of the entire property located at 2601 West Wisconsin Avenue, in the City and County of Milwaukee, as a whole unit and single entity, with all its square footage, on February 28, 2001, in the condition of the property on that date?" The jury answered: $0.
¶ 33 The circuit court (Elsa C. Lamelas, Judge) rendered a judgment consistent with the jury's verdict. The judgment required the VFW to return the $300,000 award that it previously had received from the Redevelopment Authority and to pay $87,348 in interest and statutory costs. The VFW contends that "this is the wors[t] abuse of condemnation powers ever recorded in the State of Wisconsin."[12]

II
¶ 34 Article I, Section 13 of the Wisconsin Constitution provides in full that "[t]he property of no person shall be taken for public use without just compensation therefor."[13]
¶ 35 The text of this provision of the Wisconsin Constitution is substantially similar to the Takings Clause of the Fifth Amendment to the United States Constitution, which provides that private property shall not "be taken for public use, without just compensation."[14] Accordingly, when interpreting and applying Article I, Section 13 of the Wisconsin Constitution, this court long has sought guidance in decisions based on the federal Takings Clause or on analogues in the constitutions of other states.[15]
¶ 36 It is undisputed that the Redevelopment Authority has taken the VFW's property for public use and is obligated to provide just compensation therefor. Although the VFW held only a leasehold interest in the real estate taken, the court held in Maxey v. Redevelopment Authority of Racine, 94 Wis.2d 375, 400, 404, 288 N.W.2d 794 (1980), that under ordinary circumstances a lessee with a lease for more than one year has a property interest and is entitled to some portion of a condemnation award. The court stated that "[i]t is well settled that a lessee has a property interest; and, when that interest is completely taken by a condemning authority, *758 the lessee is entitled to compensation."[16]
¶ 37 The question in the present case is what amount of compensation is "just" within the meaning of Article I, Section 13. Answering this question requires us to interpret a provision of the state constitution, which we do independently of the circuit court and court of appeals, although benefiting from their analyses.[17]
¶ 38 The constitutional requirement of just compensation cannot be reduced to a formula or expressed in inexorable rules.[18] The requirement of just compensation "derives as much content from the basic equitable principles of fairness, as it does from technical concepts of property law."[19] Courts have determined just compensation according to practical rules that work substantial justice in the ordinary case but may be subject to exception when warranted by the circumstances.[20]
¶ 39 The "unit rule"sometimes called the "undivided fee rule"is one of these practical rules. As we have stated, under the unit rule there is no separate valuation of improvements or natural attributes of the land, and the manner in which the land is owned or the number of owners does not affect the value of the property.[21] When property that is held in partial estates by multiple owners is condemned, the condemnor provides compensation by paying the value of an undivided interest in the property rather than by paying the value of each owner's partial interest.[22] Simply stated, the unit rule determines the fair market value as if only one person owned the property. When the value of the property is determined, the condemnor makes a single payment for the property taken and the payment is then apportioned among the various owners.[23]
*759 ¶ 40 That property is valued as an integrated and comprehensive unit does not mean that the individual components of value may not be examined or considered in arriving at an overall fair market value.[24] "The unit rule requires only that the various components be valued as contributing parts of an organic whole."[25]
¶ 41 In Wisconsin jurisprudence, "acceptance [of the unit rule] is beyond question."[26] Indeed the unit rule is accepted in the majority of American jurisdictions.[27] The unit rule is a carefully guarded rule and only in rare and exceptional situations are departures permitted.[28]
¶ 42 The VFW contends that this court must make an exception to the unit rule in the present case in order to avoid a grossly unjust result.
¶ 43 The VFW argues that under the unit rule the VFW will not be compensated for the loss of its valuable leasehold interest because the value of its leasehold interest exceeds the zero value of an undivided interest in the condemned property. According to the VFW, the unit rule should not be applied when payment equaling the value of an undivided interest in condemned property is insufficient to fully compensate owners holding partial interests in the property.[29]
¶ 44 The court of appeals agreed with the VFW, concluding that the necessities of the instant case require an exception to the unit rule. According to the court of appeals, the particular circumstances leading to the conclusion that application of the unit rule amounts to an unconstitutional taking, and that the VFW must be afforded an opportunity to prove the value of its leasehold interest, are that the leasehold was a long-term lease; that the lease did not include a forfeiture provision upon condemnation; and that the fair market value of the property was found to be zero. The court of appeals seemed to conclude as a matter of public policy that when the fair market value of the condemned property is zero, awarding a lessee zero dollars upon condemnation would be a manifest injustice. The court of appeals remanded the cause to the circuit court to value the VFW's separate leasehold interest and to *760 allow the VFW to recover something more than the VFW's share of the fair market value of the condemned property. The court of appeals decision is based on equitable principles of fairness to the VFW.
¶ 45 Several courts in other states have, as the VFW urges, departed from the unit rule when the aggregate value of partial interests in the condemned property exceeds the value of an undivided interest. In such cases, these courts apply what commentators call the rule of "separate" or "independent" valuation.[30] Application of this rule indemnifies each of the several owners. The condemnor pays each of the several owners the fair market value of his, her, or its property interest even though the total amount paid exceeds the fair market value of the property as if owned by a single owner.[31]
¶ 46 In contrast, an equal or greater number of courts do not depart from the unit rule when the aggregate value of partial interests in property exceeds the fair market value of an undivided interest.[32] *761 The rationale for applying the unit rule under these circumstances is that the condemnor, representing the public, should not pay a total sum to all the owners that exceeds the total fair market value of the property were the property held by one person.
¶ 47 In Green Bay Broadcasting Co. v. Redevelopment Authority of Green Bay, 116 Wis.2d 1, 342 N.W.2d 27 (1983), we stated that although partial owners are constitutionally entitled to just compensation, "contracts between the owners of different interests in the land should not be permitted to result in a total sum which is *762 in excess of the whole value of the undivided fee."[33] This language in the Green Bay Broadcasting decision cannot be reconciled with the VFW's position that compensation should be awarded for the taking of its leasehold interest when the undivided property has no value. Green Bay Broadcasting is also inconsistent with the cases from other states holding that the condemnor must provide compensation sufficient to indemnify each partial owner of real property even when the total paid exceeds the fair market value of the undivided property. Green Bay Broadcasting is consistent with the cases from many other jurisdictions holding that the unit rule should be applied even when the aggregate fair market value of partial interests in property exceeds the total value of an undivided interest.
¶ 48 The VFW implicitly invites this court to reconsider the analysis in Green Bay Broadcasting and to withdraw language relating to the unit rule from that opinion. The court of appeals, which held in the VFW's favor, discussed Green Bay Broadcasting but did not discuss the relevant language we set forth above.[34]
¶ 49 Courts should not apply the unit rule robotically as Stepford judges.[35] Departure from the unit rule may be made in rare and exceptional circumstances. The instant case, however, does not present a rare and exceptional situation justifying departure from the unit rule set forth in Green Bay Broadcasting.[36] Many cases have applied the unit rule to condemnation of the lessor's and lessee's interests. We follow the unit rule in the present case for several reasons.
¶ 50 First, the unit rule stated in Green Bay Broadcasting protects the interests of both the public and the private property owners in the instant case. It comports with the principle that just compensation "means a compensation that would be just in regard to the public, as well as in regard to the individual. ..."[37]
¶ 51 Under the unit rule, the public pays the full value of the property that it takes but is not required to pay excess value attributable to contracts between *763 the owners of different interests in the property.[38] Because eminent domain terminates leases,[39] the entire fee simple estate (as if not leased) is what the condemnor is purchasing. The fee simple estate is valued under the unit rule. This valuation equitably balances property owners' interest in receiving compensation against the public's interest in paying a fair, reasonable amount for property acquired by eminent domain.
¶ 52 Second, the "fairness award" doctrine adopted by the court of appeals conflicts with the principle that damages lacking a direct relationship to the fair market value are incidental or consequential damages and are not considered when determining just compensation under the constitution.[40] Under the court of appeals' decision, if the fair market value of the property in condemnation is not enough to pay the lessee, the condemnor must pay more for the property than it is worth. The result of the fairness award doctrine is that the condemnor becomes a guarantor of a private lease in low-to-no-value leased property. In the present case, the condemnor would be insuring the VFW's sale-leaseback business deal that has gone bad. In other words, under the fairness doctrine, the condemnor becomes liable to the lessee for consequential, incidental damages associated with the termination of the lease, above and beyond the fair market value of the property. Such a bailout by the condemnor is not authorized by statute and is not required by the state constitution.
¶ 53 Third, the court of appeals' "fairness award" doctrine is at odds with Walgreen Co. v. City of Madison, 2008 WI 80, 311 Wis.2d 158, 752 N.W.2d 687. In Walgreen, this court held that for purposes of determining the fair market value of that real estate for property-tax-assessment purposes, a lease favorable to the lessor did not increase the market value of the fee simple estate.[41] The Walgreen court declared that a business arrangement extraneous *764 to the lease but built into the rental agreement reflects a business-contractual arrangement, not real property value.[42]
¶ 54 In the instant case, VFW's lease is a lease unfavorable to the lessor. The VFW refers to the lease as a "negative lease" because it "encumbers rather than enhances the value of the fee."[43] When the negative lease is relatively long and rental values have substantially increased since the beginning of the lease term, the lessee's share of a condemnation award may exhaust the entire award. Maxey, 94 Wis.2d at 401, 288 N.W.2d 794. Maxey does not, however, support abandonment of the unit rule.
¶ 55 The VFW's negative lease does not present a usual negative lease. The VFW lease, like the Walgreen lease, reflects a business arrangement. The VFW's sweetheart sale-and-leaseback business arrangement reflects a business-contractual arrangement, and according to Walgreen, should not be considered in determining the fair market value of the fee simple estate.
¶ 56 The court of appeals decision would change Wisconsin law so that a lessor's separate real property interest and the lessee's separate leasehold interest would be valued separately for condemnation purposes. Such an approach ignores the fact that the unit rule and the statutes and case law providing for the valuation of the fair market value of a fee simple interest in real property; ignores the fact that in condemnation proceedings a lease is terminated and the lessor and lessee allocate the sum paid for the total fee estate unless the lease provides otherwise; and ignores the fact that a business-contractual arrangement between the parties built into the rental agreement does not get valued in calculating the fair market value of the condemned property.
¶ 57 Fourth, although the unit rule admittedly may leave a lessee vulnerable to injury when the lessor failsas the lessors in the present case apparently failedto maintain property in a valuable state prior to a condemnation, a lessee may obtain by contract the protections not afforded by the constitution.
¶ 58 Although "complete condemnation of a property terminates a lease attached to that property,"[44] the lessee and lessor nevertheless "may contract for their rights and obligations in the event of condemnation."[45] Furthermore, "[t]he termination of a lease would not ordinarily be expected to extinguish an existing cause of action for a breach of the lease."[46] Contract law offers tools with which a lessee may guard against injury resulting *765 from the lessor's failure to maintain the property prior to a condemnation.[47]
¶ 59 The VFW protests that it did commence an action against the lessors for breach of the lease agreement in the present case. According to the VFW, that action was dismissed on the ground that the VFW lost the right to sue the lessors once the property had been condemned. During oral argument to this court, counsel for the VFW contended that the Redevelopment Authority's actions condemning the property cut off the VFW's ability to recover from the lessors who allegedly had violated the lease in allowing the property to deteriorate. Counsel for the VFW argued as follows:
If the [Redevelopment Authority] wants to apply the unit rule, that's finejust so long as the [VFW] retains the right to sue the defaulting lessor. But there's a combination of rules here. There's the unit rule, and then the rule that in condemnation, the condemnation terminates the obligations between the lessor and the lessee. [The circuit court] dismissed [the VFW's] case [against the lessors].... I invite you to examine that record carefully, because it is true that a strict application of the unit rule is acceptable just so long as you don't enforce the collateral rule which prevents the lessee (in this case) from suing the lessor for an obvious breach of lease. But that happened in this case.
¶ 60 The VFW's account of its prior lawsuit against the lessors, however, does not tell the full story. The circuit court did not dismiss the VFW's action against the lessors on the basis stated by the VFW.
¶ 61 The VFW filed a complaint against all three lessors (Towne Metropolitan, Marquette University, and Maharishi Vedic University), alleging that they had "breached the lease obligation to maintain the property in a condition so that it will have a value on February 28, 2001 [the date of the condemnation] of an amount sufficient to compensate the VFW for the value of its leasehold."[48] The court of appeals concluded that the VFW's complaint did not state a claim upon which relief could be granted, because the lease did not contain the provision that the VFW, in its complaint, accused the lessors of breaching.[49] The court of appeals refused to consider the argument that the VFW made on appeal (but not in the circuit court) that the lessor had an obligation under the lease to maintain the hotel building and that Maharishi Vedic University breached this obligation, causing the condemnation.[50]
¶ 62 The court of appeals in that case explicitly declined to determine whether *766 the condemnation had affected the VFW's right to bring an action against the lessors for breach of the lease. It stated that in light of its conclusion that the VFW failed to state a claim for breach of contract in the first instance, the court of appeals had no need to determine whether the VFW could bring a breach-of-contract action against the lessors notwithstanding the condemnation.[51] Accordingly, the court of appeals affirmed the circuit court's judgment and orders dismissing the VFW's action against the lessors.
¶ 63 The VFW's basic point is that if the VFW is denied the right to prove the fair market value of its leasehold interest when the VFW has been barred from proceeding against the lessors for breach of the lease, an unconstitutional taking has occurred. We disagree with the VFW. The VFW was not barred from suing the lessor for damages. The VFW, a long term lessee, is asking the condemnor to shield it from devaluation of its interest and to place it in a better position than a lessor-owner.
¶ 64 In effect the VFW is asking the Redevelopment Authority to protect the VFW against the loss of its sale price of the real estate, which was payable over many years through a favorable lease. The VFW agreed to the sale and leaseback arrangement, assumed the possibility of total loss, and did not protect itself against diminution of value of the property and condemnation. Equity does not require a condemnor to indemnify the VFW against the risk it undertook: that the value of its leasehold interest would not equal the sale price of its interest in the real estate. Mandatory indemnification through condemnation for a "lost purchase price" would be contrary to the principle that contracting parties are free and able to allocate economic risk.
¶ 65 We agree with the Supreme Court of Massachusetts, which has stated that it is not reasonable that "losses arising from the failure of [private] contracts which otherwise might furnish grounds of damage between the individual parties, should measure the compensation to be rendered for the property so taken."[52] A condemnation proceeding cannot be used in these circumstances to recover damages that could have been determined by contract between the parties.
¶ 66 In sum, the VFW's failure to recover from the lessors for the lessors' failure to maintain the property is not related to the condemnation. The VFW's loss did not result from the application of the rule that complete condemnation of a property terminates a lease attached to that property and that the unit rule governs fair market value. The VFW's loss might have been recovered in an action against the lessors for damages for breach of the lease; this action foundered because the VFW, when proceeding in the circuit court, did not plead or argue that the lessors had breached any lease provision that required the lessors to maintain the premises.
¶ 67 Fifth, the VFW errs in relying upon Boston Chamber of Commerce v. City of Boston, 217 U.S. 189, 30 S.Ct. 459, 54 L.Ed. 725 (1910), stating in part that "the question is, What has the owner lost? not, What has the taker gained?"[53] Reliance *767 on Boston Chamber of Commerce is not persuasive under the circumstances of the present case.
¶ 68 In Boston Chamber of Commerce, the City of Boston laid out a public street on a parcel of land owned by the Boston Chamber of Commerce. The parcel was already subject to an easement of way, light, and air benefitting the Central Wharf and Wet Dock Corporation, as well as subject to a mortgage, itself subject to the easement, benefiting Boston Five Cents Savings Bank. An unencumbered interest in the parcel would have been worth approximately $60,000. The laying out of the public street, however, resulted in minimal damage to the owners. The fee was worth little, being restricted by the easement, and the holder of the easement "lost nothing by the superposition of a public easement upon its own."[54]
¶ 69 The three property owners (Boston Chamber of Commerce, Central Wharf, and the Bank) wanted to value the parcel as if unencumbered so that Boston would have to pay $60,000 to the property owners to divide among themselves. The property owners contended that they were entitled to recover the full value of an undivided interest in the land that was taken, notwithstanding their actual loss, stipulated to be only $5,000.
¶ 70 Justice Oliver Wendell Holmes, writing for the United States Supreme Court, stated that "the question is, What has the owner lost? not, What has the taker gained?"[55] The loss that the owners sought to recover was "of theoretical creation, suffered by no one in fact."[56] Accordingly, the Court held that the owners were entitled to recover no more than the $5,000 required to compensate them for their actual loss, despite the larger value of an undivided interest in the land that had been taken. The Court stated: "We regard it as entirely plain that the [owners] were not entitled, as a matter of law, to have damages estimated as if the land was the sole property of one owner. ..."[57]
¶ 71 A more recent United States Supreme Court decision, Brown v. Legal Foundation of Washington, 538 U.S. 216, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003), is similar to the Boston Chamber of Commerce case. This case involved the constitutionality of IOLTA (Interest on Lawyers' Trust Account) funds, which the Wisconsin Supreme Court has also authorized. In Brown, the Washington Supreme Court had promulgated rules under which the interest on a certain class of lawyers' trust accounts was transferred to the Legal Foundation of Washington, which used *768 the interest for tax-exempt, law-related charitable and educational purposes.[58]
¶ 72 The Washington Supreme Court's rules forbade lawyers from placing a client's funds in these trust accounts under circumstances in which the client's funds could generate net interest for the client's benefit.[59] Only funds that could not generate net interest for the client were to be placed in trust accounts yielding interest for the use of the Legal Foundation.[60]
¶ 73 The United States Supreme Court assumed for purposes of deciding Brown that the Washington Supreme Court's program amounted to a per se taking of the clients' interest in their escrow deposits.[61] The Court therefore turned its attention to determining whether any compensation was due to clients under the Just Compensation Clause of the Fifth Amendment.[62]
¶ 74 The Court concluded in Brown that a client was due zero compensation for the taking. The Court quoted and relied upon "Justice Holmes' characteristically terse statement"[63] in Boston Chamber of Commerce "that `the question is what has the owner lost, not what has the taker gained.'"[64] The Court concluded that although the condemnor gained a lot of money from the plan of "condemning" the clients' interest, the clients lost nothing from the taking of interest; the Washington Supreme Court's rules did not permit their funds to be used for public purposes except when the clients' funds could not generate interest for the clients' benefit. The Court examined what the clients (the owners) lost, not what the condemnor gained, and concluded that "just compensation for a net loss of zero is zero."[65]
¶ 75 The Boston Chamber of Commerce and Brown decisions stand for the proposition that a condemnor need not provide compensation for a loss "of theoretical creation, suffered by no one in fact,"[66] regardless of the gain to the condemnor. Nichols on Eminent Domain interprets Boston Chamber of Commerce as demonstrating that the constitution permits deviation from the unit rule when the rule would result in a condemnee "recover[ing] more than the damages actually suffered by him."[67]
*769 ¶ 76 Neither the Boston Chamber of Commerce nor the Brown decision demonstrates that a condemnor is required to compensate several owners of a single parcel of land separately when doing so would mean paying more than the fair market value of the property as owned by a single owner.
¶ 77 When the language in Boston Chamber of Commerce stating that the question is what has the owner lost, not what has the taker gained, is read out of context, it could be interpreted as meaning that the condemnor must indemnify condemnees for all losses resulting from the condemnation, although doing so may mean paying more than the fair market value of the property that is taken. This interpretation, however, would be inconsistent with the Court's oft-repeated endorsement of the market approach to determining just compensation.[68]
¶ 78 Furthermore, the United States Supreme Court has made clear in numerous cases that indemnification of all losses suffered by the condemnee is not the rule. Although the Court generally "has sought to put the owner of condemned property `in as good a position pecuniarily as if his property had not been taken,'"[69] the "principle of indemnity has not been given its full and literal force."[70] Notwithstanding the "loss to the owner" language in Boston Chamber of Commerce, compensation may be just although it does not provide full indemnification to a condemnee. Thus, for example, the United States Supreme Court has held that the condemnor generally may provide just compensation by paying the fair market value of condemned property, even though the market value standard clearly leaves owners undercompensated to the extent that property is uniquely suited to their needs.[71]
¶ 79 In sum, Holmes' "characteristically terse statement" in Boston Chamber of Commerce is clearly applicable to situations in which a condemnee seeks compensation for a theoretical loss. The statement has been subject to varying interpretation,[72] and is more frequently *770 quoted in the United States Supreme Court's case law than explained or applied.
¶ 80 Sixth, the VFW errs in arguing that the conduct of the Redevelopment Authority justifies foregoing application of the unit rule in the present case. Counsel for the VFW asserted during oral argument that the Redevelopment Authority intentionally permitted the hotel building to deteriorate so that the Redevelopment Authority could acquire the building and the underlying land at a reduced cost. The VFW urges that the unit rule should not be applied in light of the Redevelopment Authority's conduct.
¶ 81 Counsel's allegations are not supported by the record. The record does not make clear when or why the hotel building came to be in a worthless state at the time of condemnation.[73] That the building was worthless and needed to be razed made the underlying land worthless because the costs of razing the hotel exceeded the fair market value of the land. Furthermore, counsel's allegations regarding the Redevelopment Authority's conduct and motive are not consistent with the fact that the Redevelopment Authority initially paid a substantial sum in compensation for the taking of a property that was, according to the jury's verdict, worthless.
¶ 82 We conclude that using the unit rule in the present case to value the whole property to determine the amount of compensation due to the VFW does not violate the just compensation clause. We conclude that the VFW receives just compensation when it receives no compensation for its leasehold interest in a property that has no value. Accordingly, we reverse the decision of the court of appeals reversing the judgment of the circuit court. The judgment of the circuit court is affirmed.
The decision of the court of appeals is reversed.
¶ 83 ANNETTE KINGSLAND ZINGLER, J. (concurring).
While it is often said that bad facts make bad law, this court has not succumbed to that legal axiom in this case despite the absolutely dreadful situation the VFW finds itself in. I join the majority, but I write separately to emphasize that while we sympathize with the VFW, our sympathy cannot dictate the result.
¶ 84 The unfortunate situation the VFW finds itself in is quite sympathetic. The VFW, once the owner of the prime real estate at issue here, conveyed the property to another in exchange for a 99-year lease with annual rent due of $1. For that $1, *771 the VFW obtained 5,250 square feet of space with no obligations to pay for taxes, utilities, maintenance, or even redecoration costs. Because of acts outside of the VFW's control, the building fell into a state of disrepair such that the city of Milwaukee condemned the property, which eventually led to the eviction of the VFW. The VFW claimed its interest in the property was $1.8 million, but pursuant to the unit rule, the VFW was unfortunately left with no money for its interest in the property. As a result, the VFW was left not only with no place to conduct its business, but it was left with no money to find a new place to call home.
¶ 85 In a perfect world, the VFW would be given the necessary funds to replace their space. However, our precedent dictates that we must apply the unit rule to the case at hand, and as a result, the jury verdict must be sustained and the VFW will receive nothing for its loss.
¶ 86 While my heart may want to rule in favor of the VFW, that would require me to circumvent the unit rule, which our precedent requires that we apply in this case. To invent an exception here would swallow, and thus abandon, the rule. As Justice Wilcox once noted, "A legitimate system of law requires adherence to established legal principles, even if such adherence does not produce a result deemed desirable. ..." Thomas v. Mallett, 2005 WI 129, ¶ 180, 285 Wis.2d 236, 701 N.W.2d 523 (Wilcox, J., dissenting). The Missouri Supreme Court's Chief Justice has aptly noted:
Judges are accountable to uphold the rule of law through their decisions. This means that, just as juries are asked to set aside their personal beliefs and decide a case based only on the law and the evidence, judges also must set aside their personal feelings, beliefs and attitudes and decide each case according to the facts and law in that case.
Column by Michael A. Wolff, C.J., Your Missouri Courts, Law Matters: Judges Are Accountable ... To The Law (Dec. 15, 2005) available at http://www.courts.mo. gov/page.asp?id=1082.
¶ 87 Despite the unfortunate situation the VFW finds itself in, I must follow Wisconsin's precedent, and in this case that means I must join the majority's application of the unit rule.
¶ 88 I am authorized to state that Justice MICHAEL J. GABLEMAN joins this concurrence.
¶ 89 DAVID T. PROSSER, J. (dissenting).
"Property must be secured or liberty cannot exist." John Adams 1791.[1]
¶ 90 The protection of private property is one of the principal objectives of the United States Constitution.[2] The original constitution prohibited the states from passing any "law impairing the obligation of contracts."[3] The Fifth Amendment *772 added that "[n]o person shall ... be deprived of ... property, without due process of law; nor shall private property be taken for public use, without just compensation." The Fourteenth Amendment imposed the due process limitation upon the states, and the United States Supreme Court later interpreted this due process provision as incorporating just compensation.[4] The prohibition against the impairment of contracts and the requirement of just compensation are embodied in the Wisconsin Constitution.[5]
¶ 91 This case concerns just compensation for a prepaid, long-term lease. The issue presented is whether the City of Milwaukee Redevelopment Authority (Redevelopment Authority) may take private property that is subject to a prepaid, long-term lease that has value, evict the leaseholder from the property, and demolish the property, impairing and terminating the leaseholder's contract and real property rights in the process, without paying the leaseholder any compensation whatever for the taking of its property. In short, may the Redevelopment Authority extinguish the leaseholder's rights without any compensation and still comply with all the constitutional requirements designed to protect private property rights?
¶ 92 The unusual circumstances of this case, culminating in zero payment for the taking of an 11-story building on historic Wisconsin Avenue in Milwaukee, as well as the termination of a valuable leasehold interest in that building, cry out for an exception to the "unit rule" because of the grossly unjust result that it visits upon the leaseholder. The majority will hear none of it. Indeed, the majority seizes the opportunity presented by this case to (1) disavow existing exceptions to the unit rule in Wisconsin law; (2) minimize Justice Oliver Wendell Holmes, Jr. and the Wisconsin cases citing his landmark decision in Boston Chamber of Commerce v. City of Boston, 217 U.S. 189, 30 S.Ct. 459, 54 L.Ed. 725 (1910); (3) repudiate the concept of consequential damages under the Wisconsin Constitution; and (4) validate the unprecedented proposition that no compensation is just compensation for the taking of valuable property. Thus, the majority decision represents a very different view of private property rights from what we are accustomed to in Wisconsin. For the reasons stated below, I respectfully dissent.

I
¶ 93 As noted, the facts in this dispute are unusual. The VFW was the sole owner of a parcel of real property situated on the south side of Wisconsin Avenue at 26th Street in downtown Milwaukee. In 1961, the VFW conveyed its land with improvements to Towne Metropolitan (Towne), a real estate development company that planned to construct a large hotel on the site. In return for the conveyance of its property, the VFW obtained a 99-year lease for 5,250 square feet on the ground floor of the new hotel. This lease contained an option to renew for another 99 years. It also provided that the VFW's space would be designed for VFW purposes and that all leasehold improvements and equipment would be furnished by the *773 lessor. In addition, the annual rent was to be only $1.00, and the lessor would pay all real estate taxes, heating, air conditioning, and maintenance costs, and would redecorate the premises every seven years.
¶ 94 The terms of this lease were honored by Towne when the 11-story hotel was operated by Hilton Hotels, and later Holiday Inn, and then honored by Marquette University (Marquette), which acquired the property in 1986.
¶ 95 Over time, the neighborhood declined, and the 11-story building began to deteriorate. In 1994, Marquette sold the property, which was being used for student housing, to the Maharishi Vedic University (the Maharishi) for $600,000. The Maharishi never occupied the property.
¶ 96 One of the major fact questions in this case is why the Maharishi never occupied the building. Counsel for the Redevelopment Authority explained that the new owner was never given occupancy permits, presumably because the building had building code violations. Counsel for the VFW asserted that the City of Milwaukee refused to act on repeated demands by the VFW that the City enforce the building code against the new owner. Instead, the City simply continued to assess and tax the property at a value near the 1994 purchase price, while the Redevelopment Authority sent signals of its intention to condemn the property as part of an urban redevelopment project. In February 1998, the Redevelopment Authority held a public hearing to consider creating a redevelopment district, and after the hearing, it issued a relocation order. All these factors contributed to the deterioration of the building and its eventual abandonment by the Maharishi.
¶ 97 On January 18, 2001, after identifying three comparable properties and utilizing the unit rule, the Redevelopment Authority issued a jurisdictional offer in the amount of $440,000 to be divided between two named owners, the Maharishi and the VFW. On February 28, 2001, the $440,000 proposed Award of Damages was deposited with the Milwaukee County Clerk of Circuit Court. The award covered not only the land, the hotel building on the land, the personal property in the building, and the lease, but also an adjoining parking lot owned exclusively by the Maharishi.
¶ 98 On December 7, 2001, the Milwaukee County Circuit Court divided the Award of Damages. The Maharishi was awarded $140,000, less delinquent taxes, for the adjoining parking lot and its personal property in the hotel; the VFW was awarded $300,000, less taxes due, for the value of its leasehold interest.
¶ 99 The City had assessed the former hotel property at $566,000 for tax purposes in the year prior to the taking. It reduced the assessment to $1,000 for the year of the taking.
¶ 100 On February 15, 2002, the VFW appealed the adequacy of the Award of Damages to the Condemnation Commission (the Commission) pursuant to Wis. Stat. § 32.05(9). The Maharishi did not join this appeal, having accepted an award of $140,000, less delinquent taxes. After litigation to determine how the Commission should value the property, the Commission valued the total property, using a strict application of the unit rule, at $425,000; that is, $15,000 less than the Redevelopment Authority's jurisdictional offer. This award was made in December 2004.
¶ 101 The VFW appealed to Milwaukee County Circuit Court. After a four-day trial in September 2006, a jury determined that the hotel building had no value. The jury was not permitted to consider the value of the VFW's leasehold. The court thereupon entered judgment against the VFW in the amount of $387,348.24, taking back the $300,000 that was paid to the *774 VFW as part of the allocation of the Award of Damages, plus accumulated interest and costs.
¶ 102 The VFW appealed, and the court of appeals, in a unanimous decision, reversed. The court of appeals remanded the case to the circuit court for a determination of the value of the VFW's prepaid, long-term lease. It determined that the unit rule, as applied to the unusual facts of this case, was unconstitutional because it permitted a taking of the VFW's entire leasehold interest (as well as the building and underlying land) for zero compensation.
¶ 103 The Redevelopment Authority sought review in this court on grounds that the unit rule was and is the only appropriate method of valuing the combined interests in the property taken. The Redevelopment Authority asserts that it was acting prudently in condemning the property, evicting the VFW, and razing the building (as it did in 2003). It asserts that the building had become unsafe to its tenants and an impediment to area renewal and that it spent hundreds of thousands of dollars to raze the building and the adjoining parking ramp to prepare the area for future development.[6] The Redevelopment Authority claims that the court of appeals decision is unprecedented and will adversely impair the legitimate interests of public condemnation throughout Wisconsin.

II
¶ 104 The Fifth Amendment to the United States Constitution and Article I, Section 13 of the Wisconsin Constitution require that just compensation be paid when the government takes private property for a public purpose. This requirement bars the government "`from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" Dolan v. City of Tigard, 512 U.S. 374, 384, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (quoting Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960)).
¶ 105 "It has long been established that the holder of an unexpired leasehold interest in land is entitled, under the Fifth Amendment, to just compensation for the value of that interest when it is taken upon condemnation. ..." Alamo Land & Cattle Co. v. Arizona, 424 U.S. 295, 303, 96 S.Ct. 910, 47 L.Ed.2d 1 (1976) (internal footnote omitted); Maxey v. Redevelopment Auth. of Racine, 94 Wis.2d 375, 400, 288 N.W.2d 794 (1980) ("It is well settled that a lessee has a property interest; and, when that interest is completely taken by a condemning authority, the lessee is entitled to compensation."); see also United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946); A.W. Duckett & Co. v. United States, 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216 (1924).
¶ 106 The United States Supreme Court has said that just compensation "normally is to be measured by `the market value of the property at the time of the taking contemporaneously paid in money.'" United States v. 50 Acres of Land, 469 U.S. 24, 29, 105 S.Ct. 451, 83 L.Ed.2d 376 (1984) (quoting Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934)). The Court has explained that just compensation could be measured in various ways depending on the circumstances. "In an effort ... to find some practical standard, the courts early adopted, and have retained, the concept of market value." United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336 (1943). *775 "Deviation from this measure of just compensation has been required only `when market value has been too difficult to find, or when its application would result in manifest injustice to owner or public.'" 50 Acres of Land, 469 U.S. at 29, 105 S.Ct. 451 (quoting United States v. Commodities Trading Corp., 339 U.S. 121, 123, 70 S.Ct. 547, 94 L.Ed. 707 (1950)); Kirby Forest Indus. v. United States, 467 U.S. 1, 10 n. 14, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984).
¶ 107 The unit rule is a valuable tool in determining market value in a condemnation involving a single parcel of property that is encumbered by more than one interest, such as a lease. Specifically, "[t]he unit rule requires that [the] real estate be valued in respect to its gross value as a single entity as if there was only one owner." 4 Nichols on Eminent Domain § 13.01[16][a] (3d ed. 2007). "[The] rule exists for the protection of the condemnor," as it ensures that the aggregate value of the separate interests in the property cannot exceed the property's value as an unencumbered whole. Id., § 13.08[2]. "Ordinarily no difficulty (or apparent injustice) arises from the application of the [unit] rule. The value of a lease is paid to the lessee and deducted from the compensation of the owner of the fee." Id., § 12.05[1].
¶ 108 Although the unit rule is the generally accepted method for valuing condemned property that is encumbered by various interests, its operation cannot displace the constitutional mandate of just compensation. State v. Platte Valley Pub. Power & Irrigation Dist., 147 Neb. 289, 23 N.W.2d 300, 312 (1946).[7] Accordingly, the unit rule cannot dictate the determination of just compensation in all cases involving multiple interests. United States v. 6.45 Acres of Land, 409 F.3d 139, 147 (3d Cir. 2005) ("[T]he unit rule is [not] to be applied rigidly in all cases."); Nebraska v. United States, 164 F.2d 866, 869 (8th Cir. 1947) ("[T]he [unit] rule is not one that is autocratically absolute."); Nichols on Eminent Domain, supra, § 13.08[4] ("Despite statements indicating broad acceptance of the unit rule, other methods have been approved by courts in valuing a leasehold interest."); see also majority op., ¶ 45 (discussing a host of jurisdictions that have departed from the unit rule).[8]
¶ 109 In some cases, "a departure [from the unit rule] may be necessary to avoid grossly unjust results. See, e.g., United States v. Welch, 217 U.S. 333, 338[, 30 S.Ct. 527, 54 L.Ed. 787] (1910)." 6.45 Acres of Land, 409 F.3d at 148 (emphasis added); United States v. 499.472 Acres of Land, 701 F.2d 545, 549 (5th Cir.1983); United States v. Corbin, 423 F.2d 821, 828 (10th Cir.1970); Nebraska, 164 F.2d at 869; Arkansas State Highway Comm'n v. Fox, 230 Ark. 287, 322 S.W.2d 81, 82-83 (1959); People ex rel. Dept. of Pub. Works v. Lynbar, Inc., 253 Cal.App.2d 870, 62 Cal.Rptr. 320, 327 (1967); State Highway Dept. v. Thomas, 115 Ga.App. 372, 154 S.E.2d 812, 815-16 (1967); Wilson v. Fleming, 239 *776 Iowa 718, 31 N.W.2d 393, 401-02 (Iowa 1948); Mayor of Baltimore v. Latrobe, 101 Md. 621, 61 A. 203, 205-06 (1905); State ex rel. McCaskill v. Hall, 325 Mo. 165, 28 S.W.2d 80, 82 (1930); Platte Valley, 23 N.W.2d at 307-08; see also majority op., ¶¶ 41, 49 ("Departure from the unit rule may be made in rare and exceptional circumstances.").[9]
¶ 110 There are rare exceptions to fair market value as the appropriate measure of just compensation, and there are rare exceptions to the unit rule as the appropriate way to determine fair market value. As the Supreme Court observed in Mississippi & Rum River Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206 (1878), "[e]xceptional circumstances will modify the most carefully guarded rule."
¶ 111 The court of appeals decision in this matter identified three Wisconsin cases where courts have recognized exceptions to the unit rule.
¶ 112 First is Luber v. Milwaukee County, 47 Wis.2d 271, 177 N.W.2d 380 (1970). In Luber, this court interpreted Article I, Section 13 of the Wisconsin Constitution to award $11,200 in lost rent to the condemnees for 32 months of vacancy leading up to condemnation of their building. Id. at 273, 276, 284, 177 N.W.2d 380. The Milwaukee County Expressway Commission, which had condemned the building for a public purpose, was livid that it was being asked to pay for something more than the fair market value of the building. See id. at 276, 177 N.W.2d 380. "The question," this court stated, "is whether there are any interests, other than the building itself, for which appellants are constitutionally entitled to compensation." Id. at 278, 177 N.W.2d 380. The court answered with the following:
We think that under property concepts one's interest in rental income is such as to deserve compensation under the "just compensation" provision of the Wisconsin Constitution. In the instant case it is undisputed that the pendency of the condemnation was the sole cause of the appellants' rental loss. The reason for formerly denying compensation for such interest was that the condemnor received no benefit from the taking thereof. This court, however, departed from such thinking when it said in Volbrecht v. State Highway Comm[ission, 31 Wis.2d 640, 647, 143 N.W.2d 429 (1966),] that "Just compensation is what the owner has lost, not what the condemnor has gained. ..."
. . . .
We believe that one's interest in rental loss is such as is required to be compensated under the "just compensation" clause of art. I, sec. 13, Wisconsin Constitution.
Id. at 279, 283, 177 N.W.2d 380 (internal footnote omitted) (first ellipsis in original).
¶ 113 Luber represented a departure from the unit rule when it recognized lost rents as a compensable loss and described the "inadequacy of merely awarding the fair market value of the property actually taken." Id. at 280, 177 N.W.2d 380. Luber is the flip side of this case, because here, the "rent" was prepaid when the VFW conveyed its entire property to the developer for its leasehold interest. The *777 Luber case is also valuable in illuminating how a tenant can be scared off by the "imminent" threat of acquisition of the leased property, just as here the Maharishi was motivated not to repair the hotel property, and ultimately to abandon the property because of the actions of the City and the Redevelopment Authority.
¶ 114 The second case is Maxey, 94 Wis.2d 375, 288 N.W.2d 794. The facts in Maxey are complicated, but in essence, Maxey's 99-year lease in a building that was condemned by the Racine Redevelopment Authority rendered Maxey the owner of the building for purposes of a potential inverse condemnation award. Id. at 384, 288 N.W.2d 794. Maxey filed an inverse condemnation action three days before the Redevelopment Authority filed a direct condemnation action. Id. at 381, 288 N.W.2d 794.
¶ 115 The facts and reasoning of the Maxey case present striking parallels to the present case:
A. The unanimous court cited Luber with approval. Id. at 392, 288 N.W.2d 794.
B. The court reiterated that "long-term leasehold interests constitute ownership of land." Id. at 387-88, 288 N.W.2d 794.
C. The court closely tracked the conduct of the City of Racine and the Racine Redevelopment Authority leading up to formal condemnation. The City placed a moratorium on the issuance of theater licenses in the central business district of Racine, directly affecting a theater in Maxey's building which was denied renewal of its license. Id. at 385, 288 N.W.2d 794. The Redevelopment Authority and the City made published statements that the building "would be taken" through eminent domain. Id. The City and the Redevelopment Authority contacted tenants and told them that the property would be condemned and encouraged tenants to vacate the premises. Id. Some of these actions occurred more than three years before the actual petition for condemnation was filed. Id. The circuit court determined that a taking had effectively occurred two years before the Redevelopment Authority formally filed its petition for direct condemnation. Id. at 386, 288 N.W.2d 794. This court stated that "there was some impingement upon Maxey's uninhibited use of the property almost from the time the redevelopment project was proposed in 1973," id. at 388, 288 N.W.2d 794, which was well over three years before formal condemnation. The circuit court found that "the City of Racine and the Redevelopment Authority were responsible for each other's acts." Id. at 386, 288 N.W.2d 794. This court summed up the circuit court's finding with the comment that "the City of Racine and the Redevelopment Authority were to be considered as alter egos in respect to the condemnation of the Baker Block Building." Id. at 390, 288 N.W.2d 794. The parallels to this case are self-evident.
D. The court cited Just v. Marinette County, 56 Wis.2d 7, 201 N.W.2d 761 (1972), Howell Plaza, Inc. v. State Highway Commission, 66 Wis.2d 720, 226 N.W.2d 185 (1975), and Howell Plaza, Inc. v. State Highway Commission, 92 Wis.2d 74, 284 N.W.2d 887 (1979), to illustrate how government actions that effectively deprive a property owner of practically all beneficial use of his property, amount to a constructive taking or an inverse condemnation. *778 Maxey, 94 Wis.2d at 389-91, 288 N.W.2d 794. In this case, when the Redevelopment Authority acknowledges that the City would not give the Maharishi occupancy permits for the hotel building, it reveals similarities to the Maxey case.
E. The court said that "under ordinary circumstances, a lessee is entitled to some portion of the condemnation award." Id. at 401, 288 N.W.2d 794. It construed a "condemnation clause" in Maxey's lease to avoid a forfeiture: "The Wisconsin law, like the law generally, abhors a forfeiture." Id. at 403, 288 N.W.2d 794. "We conclude that the court erred when it interpreted the clause to completely deprive the lessee of any interest." Id. at 400, 288 N.W.2d 794.[10]
F. The court remanded the case to the circuit court so that Maxey could proceed on an inverse condemnation claim. Id. at 406, 288 N.W.2d 794. The effect of this ruling was to avoid a narrow interpretation of condemnation damages under the unit rule because it recognized damages that were incurred before the formal taking.
¶ 116 The third case is Redevelopment Authority of Green Bay v. Bee Frank, Inc. (Bee Frank II), 120 Wis.2d 402, 355 N.W.2d 240 (1984). In Bee Frank II, the circuit court, interpreting condemnation statutes, considered the separate appeal of a lessee who owned immovable fixtures in a condemned building. Id. at 404-05, 355 N.W.2d 240. The Green Bay Redevelopment Authority offered $282,000 to the owner of the building and offered $168,000 to Bee Frank for loss of its immovable fixtures. Id. at 405-06, 355 N.W.2d 240. Both parties rejected the offer. Id. at 406, 355 N.W.2d 240. The circuit court scheduled a hearing before the Condemnation Commission. Before that hearing, the owner of the building settled for $296,100. The Condemnation Commission then awarded Bee Frank $210,000, "an amount $41,592 (approximately 25 percent) in excess of the Redevelopment Authority's jurisdictional offer." Id. When Bee Frank asked for litigation expenses, the Redevelopment Authority objected. Id.
¶ 117 The court recounted the procedural history:
The trial court rejected the Redevelopment Authority's argument that the total amount of the property as a whole should be involved in determining Bee Frank, Inc.'s entitlement to litigation expenses. ...
The Redevelopment Authority appealed. ... In a published opinion, the court of appeals held that immovable trade fixtures were an integral part of the building and could not be considered separately from the purchase price for the land and building in determining entitlement to litigation expenses.
Id. at 406-07, 355 N.W.2d 240 (citing Redevelopment Auth. of Green Bay v. Bee Frank, Inc. (Bee Frank I), 112 Wis.2d 1, 331 N.W.2d 840 (Ct.App.1983)).
¶ 118 In its decision, the court of appeals stated that a separate award could not be made for fixtures because of the unit rule. Bee Frank I, 112 Wis.2d at 7, 331 N.W.2d 840. But this court disagreed:
Respondent ... argues that the unit rule of damages for real estate valuation mandates a finding that awarding separate litigation expenses to the owner of the immovable fixtures is impermissible. The unit rule requires improved real estate to be valued as a single entity for *779 purposes of determining the total value of property taken through condemnation.... [However, w]hile the unit rule of damages is a controlling principle in eminent domain actions, its application in determining entitlement to litigation expenses ... contravenes the public policy.

Bee Frank II, 120 Wis.2d at 413-14, 355 N.W.2d 240 (emphasis added) (internal citations omitted).
¶ 119 The plain truth is, in Bee Frank II, the value of immovable fixtures was determined separately from the value of the whole property, and litigation expenses were not keyed to the value of the whole property. The unit rule was disregarded in fact while it was being affirmed in rhetoric.[11] The rule was set aside because its application would have contravened public policy.
¶ 120 The majority opinion in this case is quick to dismiss exceptions to the unit rule without coming to grips with the fact that exceptions were recognized in Luber, in Maxey, and in Bee Frank II. The majority is quick to borrow snippets from cases like Maxey and Green Bay Broadcasting Co. v. Redevelopment Authority of Green Bay, 116 Wis.2d 1, 342 N.W.2d 27 (1983), *780 which preceded Bee Frank II, to resist any relief to a property owner whose property was taken without any compensation whatever, as though addressing a grossly unjust result on highly unusual facts is somehow an illegitimate undertaking. Permitting a limited exception to the unit rule on the extreme facts before us would not undermine the rule any more than three previous exceptions have undermined the broad and general application of the rule.

III
¶ 121 In its decision, the court of appeals sought to provide a rationale for an exception to the unit rule in this case. It cited several different federal and state cases, including Boston Chamber of Commerce, in which Justice Oliver Wendell Holmes, Jr., penned an oft-quoted aphorism pertaining to just compensation:
[T]he Constitution does not require a disregard of the mode of ownership. ... It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is what has the owner lost, not what has the taker gained.

Boston Chamber of Commerce, 217 U.S. at 195, 30 S.Ct. 459 (emphasis added). The court of appeals observed that, in this case, "the taker gained, according to the jury..., a building that was worthless when measured against fair market value. But what has the VFW lost? The jury was not allowed to consider the value of the leasehold because of the unit rule." City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the United States v. Redevelopment Auth. of Milwaukee, 2008 WI App 24, ¶ 26, 307 Wis.2d 518, 746 N.W.2d 536.
¶ 122 The majority leaps to fend off any unfair question about what the VFW has lost: "[T]he VFW errs in relying upon Boston Chamber of Commerce, stating in part that `the question is, What has the owner lost? not, What has the taker gained?'" Majority op., ¶ 67 (citation omitted). The majority tries to dismiss the statement by Justice Holmes as "not persuasive" and taken out of context. Id. 67-79.
¶ 123 In fact, several Wisconsin Supreme Court cases have recognized the Holmes standard when determining just compensation in condemnation cases. See, e.g., Luber, 47 Wis.2d at 279-80, 177 N.W.2d 380; Besnah v. City of Fond du Lac, 35 Wis.2d 755, 758, 151 N.W.2d 725 (1967); Volbrecht, 31 Wis.2d at 647, 143 N.W.2d 429. Despite the expressed acceptance of this standard in Wisconsin case law, the majority attempts to minimize the import of Justice Holmes's statement on the constitutional issue of just compensation. See majority op., ¶¶ 67-79.
¶ 124 The majority opinion dissects the Boston Chamber of Commerce case as though a penetrating new look at the facts will wipe out a century of legal decisions adhering to the Holmes standard. The Holmes standard is not irrelevant, as evidenced by the Supreme Court's decision in Brown v. Legal Foundation of Washington, 538 U.S. 216, 235-36, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003), where Justice Stevens wrote as follows: "[T]he `just compensation' required by the Fifth Amendment is measured by the property owner's loss rather than the government's gain. This conclusion is supported by consistent and unambiguous holdings in our cases." (Emphasis added.) Similarly, in City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 710, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999), Justice Kennedy observed that "[j]ust compensation ... differs from equitable restitution and other monetary remedies available in equity, for *781 in determining just compensation, `the question is what has the owner lost, not what has the taker gained.'" (Quoting Boston Chamber of Commerce, 217 U.S. at 195, 30 S.Ct. 459.)
¶ 125 The majority contends that determining just compensation by evaluating what the owner has lost and not what the taker has gained "would be inconsistent with the Court's oft-repeated endorsement of the market approach to determining just compensation." Majority op., ¶ 77. This overgeneralization is grounded in the fiction that the VFW lost nothing when its leasehold interest was taken, and it fails to appreciate that the individual valuation advocated by this dissent would measure the fair market value of what the owner (VFW) has lost. See infra, ¶ 132.

IV
¶ 126 The majority opinion makes the following statement: "[T]he `fairness award' doctrine adopted by the court of appeals conflicts with the principle that damages lacking a direct relationship to the fair market value are incidental or consequential damages and are not considered when determining just compensation under the constitution." Majority op., ¶ 52. This statement serves little purpose except to reopen hostilities over issues considered at length in City of Janesville v. CC Midwest, Inc., 2007 WI 93, 302 Wis.2d 599, 734 N.W.2d 428, and to drive another nail into this court's notable decision in Luber.

V
¶ 127 The most disturbing element of this case is that the majority approves the unprecedented proposition that no compensation is just compensation for the taking of valuable property.
¶ 128 Like Justice Holmes, Justice Hugo Black had the facility for putting profound truths into simple words. In Commodities Trading Corp., 339 U.S. at 123, 70 S.Ct. 547, he wrote the following in regards to just compensation: "[T]he dominant consideration always remains the same: What compensation is `just' both to an owner whose property is taken and to the public that must pay the bill?"
¶ 129 Zero compensation is not "just" to the leaseholder in this case. It exposes the absence of any balance between the interests of the leaseholder whose property is taken and the interests of the Redevelopment Authority that willfully moved to condemn the property. It takes the position that "compensation may be just although it does not provide full indemnification to a condemnee"[12] to its extreme, as though it were some inexorable rule that Stepford judges are powerless to resist regardless of the circumstances.
¶ 130 The majority cites Green Bay Broadcasting with approval. This is the case in which the court admits, "The unit rule is designed to protect the interests of the condemnor and not to protect the interests of a condemnee." Green Bay Broadcasting, 116 Wis.2d at 11, 342 N.W.2d 27. This quote is unnerving to people who believe that our constitutions were designed to protect property owners, not property takers.
¶ 131 The unit rule usually works well, but it is not part of either the federal constitution or the state constitution, as the Redevelopment Authority insists, and it is unconstitutional when it deprives a property owner of just compensation. In this instance, we must fashion and apply something other than strict adherence to the unit rule to comply with constitutional provisions protecting property.
¶ 132 Rather than employing the unit rule at the expense of the U.S. and Wisconsin *782 constitutions, this court should recognize an exception to the unit rule in this case so that the VFW's leasehold interest is valued independently of the property's fee simple interest. Specifically, the VFW's leasehold interest should be valued separately from the rest of the property by subtracting the value of the contract rent for the period remaining on the lease (what the VFW was obligated to pay during the lease period) from the value of the market rent for the period remaining on the lease. See, e.g., Maxey, 94 Wis.2d at 400-01, 288 N.W.2d 794; see also Nichols on Eminent Domain, supra, § 13.08[6]; majority op., ¶¶ 22 n. 10, 45.[13] This method "will adequately compensate [the VFW] for any pecuniary loss resulting from the taking."[14]Nichols on Eminent Domain, supra, § 13.08[6].
¶ 133 There may be other ways to arrive at just compensation. For instance, there ought to be some reasonable relationship between the assessed value of property for tax purposes and fair market value. The assessed value of the hotel property was $566,000 in 2000, two years after the Redevelopment Authority signaled its intent to condemn the property. The Redevelopment Authority offered $300,000 for the VFW's leasehold interest, a figure close to what its appraiser later testified the land alone would be worth. None of these three approaches will yield "just compensation" of zero.
¶ 134 The majority has given no attention to the most appropriate method of measuring the value of the VFW's leasehold interest because it is committed to the proposition that, on these facts, zero compensation is just compensation.
¶ 135 To sum up: (1) the VFW had a prepaid, long-term lease of real value; (2) the lease was a recognized property interest, the taking of which requires just compensation; (3) there was no "condemnation clause" in the lease that forfeited the VFW's right to receive just compensation; (4) the City and the Redevelopment Authority together contributed to the decline of the underlying real property by their actions and inactions and by the lengthy delay between the condemning authority's announced intention to take the property and the filing of the condemnation petition; (5) the VFW was given no opportunity before the jury to prove the separate value of its leasehold interest, i.e., no opportunity to show what it lost; and (6) the VFW is being awarded no compensation whatever for the taking of its property.
¶ 136 Would that John Adams could rise from his grave to speak for the VFW, and for property rights in twenty-first century America. I believe he would observe that, if the VFW's property can be taken without compensation, no property is secure.
¶ 137 For the foregoing reasons, I respectfully dissent.
¶ 138 I am authorized to state the Justice N. PATRICK CROOKS and Justice PATIENCE DRAKE ROGGENSACK join this dissent.
NOTES
[1] City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the U.S. v. Redev. Auth. of Milwaukee, 2008 WI App 24, 307 Wis.2d 518, 746 N.W.2d 536.
[2] We need not address additional issues that the Redevelopment Authority raises in its briefs to this court in support of its position that the court of appeals erred in reversing the circuit court's judgment. The Redevelopment Authority argues that the doctrines of due process, law of the case, claim and issue preclusion, and waiver prevent the VFW from arguing to this court that the unit rule is unconstitutional as applied in the present case.
[3] Maxey v. Redev. Auth. of Racine, 94 Wis.2d 375, 401, 288 N.W.2d 794 (1980) ("[C]ondemnation awards should be based on the value of the property as a whole as if there were only one owner, and it is only after there is a determination of the taken property's total value that it is apportioned among the various interests in the property."); 4 Phillip Nichols, Nichols on Eminent Domain § 13.01[16] (3d ed. 2007) (stating that the unit rule applies "when there are different interests or estates in the property acquired by condemnation" and that "[p]ursuant to the unit rule, the proper course is to determine the entire compensation to be awarded as though the property belonged to one person and then apportion this sum among the different parties according to their respective rights").

Section 1012 of the Uniform Law Commissioners' Model Eminent Domain Code provides:
The amount of compensation for the taking of property in which divided interests exist is based upon the fair market value of the property considered as a whole, giving appropriate consideration to the effect upon market value of the terms and circumstances under which the separate interests are held.
Model Eminent Domain Code § 1012, 13 U.L.A. 102 (2002).
[4] P.C. Monday Tea Co. v. Milwaukee County Expressway Commission, 24 Wis.2d 107, 112-13, 128 N.W.2d 631 (1964) (stating that in a condemnation case, "[f]air market value is defined as that amount which can be realized on sale by an owner willing, but not compelled, to sell to a purchaser willing and able, but not obliged, to buy") (citation omitted); Esch v. Chicago, Minneapolis & St. Paul Ry. Co., 72 Wis. 229, 231-32, 39 N.W. 129 (1888) ("The full and fair market value means what the property is worth or will sell for as between one who wants to purchase and one who wants to sell.... The market value, or what the property was worth to a person who would pay its just and full value, would certainly not exclude from the consideration of the jury the use to which the property was put by the owner; nor any reasonable use to which it could be applied by a prudent and discreet man in the immediate future.").

See also 4 Nichols, supra note 3, § 12.02[1] ("The term `fair market value' means the amount of money which a purchaser willing, but not obliged, to buy the property would pay to an owner willing, but not obliged, to sell it, taking into consideration all uses for which the land was suited and might be applied.") (footnotes omitted).
[5] See 4 Nichols, supra note 3, § 12.05[2] (contrasting the "rule of separate valuation" to the unit rule (also sometimes referred to as the undivided fee rule)); John D. Johnston, Jr., "Just Compensation" for Lessor and Lessee, 22 Vand. L.Rev. 293, 310-19 (1969) (contrasting the rule of "independent valuation of divided interests" to the unit rule).
[6] The proceedings not discussed in this opinion may be summarized as follows:

The VFW commenced an action in February 2001 challenging the Redevelopment Authority's right to condemn the property at issue in this case. The Circuit Court for Milwaukee County, William J. Haese, Judge, granted summary judgment to the Redevelopment Authority. The court of appeals affirmed the circuit court in an unpublished decision. See City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the U.S. v. Redev. Auth. of Milwaukee, No. 01AP1642, unpublished slip op., 2002 WL 207129 (Wis.Ct.App. Feb. 12, 2002).
In August 2001, the Redevelopment Authority applied for a writ of assistance to evict the VFW from the property. The Circuit Court for Milwaukee County, Maxine A. White, Judge, granted the application. The VFW appealed to the court of appeals, but in the interim a different circuit court judge approved an order requiring the Redevelopment Authority to raze the building at 2601 West Wisconsin Avenue. The court of appeals concluded that the VFW's challenge to the writ of assistance had become moot by virtue of the raze order. See City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the U.S. v. Redev. Auth. of Milwaukee, Nos. 02AP1035, 02AP1880, unpublished slip op., 2003 WL 22232032 (Wis.Ct.App. Sept. 30, 2003).
In April 2003, the VFW filed a claim for relocation benefits under chapter 32 of the Wisconsin Statutes. The Circuit Court for Milwaukee County, Francis T. Wasielewski, Judge, dismissed the claim. The court of appeals affirmed in an unpublished decision. See City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the U.S. v. Redev. Auth. of Milwaukee, No.2004AP3266, unpublished slip op., 2006 WL 327920 (Wis.Ct.App. Feb. 14, 2006).
[7] The VFW rhetorically asked the circuit court why the Redevelopment Authority would offer more than $0 when the property had no value. The circuit court opined that the Redevelopment Authority might have wanted to avoid litigation and litigation expenses and to facilitate timely occupancy.
[8] The VFW remained in the building after condemnation until April 9, 2003, when it was evicted. The City Department of Neighborhood Services issued a raze order in March 2003. The building was razed and, according to the briefs, the land remains vacant.
[9] The VFW petitioned for leave to appeal this determination. The court of appeals granted the petition and concluded that the unit rule should be used by the Condemnation Commission. The court of appeals, however, declined to address the state constitutional issue of just compensation. See City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the U.S. v. Redev. Auth. of Milwaukee, Nos. 2002AP1035, 2002AP1880, unpublished slip op., 2003 WL 22232032 (Wis.Ct.App. Sept. 30, 2003).
[10] The VFW again asserts in its brief to this court that the value of its leasehold interest was approximately $1,200,000. As it did in its brief to the circuit court, the VFW also states that this amount is "sufficient to permit the VFW to build a facility with 5,250 square feet and maintain it without occupancy costs over the remaining years in the initial term of the lease." Brief and Appendix of the City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the United States Plaintiff-Appellant at 13-14.

It is not clear that the VFW is employing the proper approach for valuing its leasehold interest. "A leasehold is normally valued as the difference between the rental value of the premises at the time of taking and the rent due the lessors during the unexpired term." Maxey, 94 Wis.2d at 401, 288 N.W.2d 794. The VFW seems to present a valuation equaling the amount that it would cost the VFW to build and maintain an entirely new substitute facility, rather than a valuation equaling the difference between the rental value of the actual premises rented by the VFW and the rent that the VFW owed under the lease.
Nevertheless, we accept for purposes of our review the VFW's contention that its leasehold interest had value. Although the premises rented by the VFW presumably had a depressed rental value by virtue of their location within a vacant and deteriorating building that apparently could not be put to any profitable use, it seems plausible that the rental value of the premises exceeded the rent of $1 per year.
[11] Each appraiser made clear in his written report that he appraised the value of the entire parcel of property, including the hotel structure and the land underneath it. The VFW's appraiser stated that his appraisal considered "the overall value of the entire property, including the Hotel, parking structure and vacant lot." The Redevelopment Authority's appraiser stated that he had appraised the "land, site improvement and building improvements."
[12] Brief and Appendix of the City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the United States at 28.
[13] The parties briefly touch upon the statutes but concentrate on interpreting the constitution. Various statutes define "property" as including estates in land and require valuation of the fair market value of the entire property taken. See Wis. Stat. § 32.01(2) and § 32.05(9)(a). The condemnor is required to pay "fair market value of the property taken." Wis. Stat. § 32.09(5)(a). The condemning authority is required to issue only one award for just compensation that names "all persons having an interest of record in the property taken and may name other persons," with apportionment made by the circuit court if there is a dispute. See Wis. Stat. §§ 32.05(7)(a), (d); 32.05(9)(a)1.-3.

Wisconsin Stat. § 32.09(5)(a) provides as follows:
In the case of a total taking the condemnor shall pay the fair market value of the property taken and shall be liable for the items in s. 32.19 [relating to additional items payables] if shown to exist.
[14] The Fifth Amendment Takings Clause is applicable to the states under the Fourteenth Amendment. See Kelo v. City of New London, 545 U.S. 469, 472, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005).
[15] See, e.g., Maxey, 94 Wis.2d at 396-99, 288 N.W.2d 794; Luber v. Milwaukee County, 47 Wis.2d 271, 277-78, 177 N.W.2d 380 (1970); Randall v. City of Milwaukee, 212 Wis. 374, 382, 249 N.W. 73 (1933); State ex rel. Carter v. Harper, 182 Wis. 148, 153-54, 196 N.W. 451 (1923).
[16] Maxey, 94 Wis.2d at 400, 288 N.W.2d 794.
[17] State v. Schweda, 2007 WI 100, ¶ 12, 303 Wis.2d 353, 736 N.W.2d 49.
[18] See United States v. Toronto, Hamilton & Buffalo Navigation Co., 338 U.S. 396, 402, 70 S.Ct. 217, 94 L.Ed. 195 (1949) ("Perhaps no warning has been more repeated than that the determination of value cannot be reduced to inexorable rules."); United States v. Cors, 337 U.S. 325, 332, 69 S.Ct. 1086, 93 L.Ed. 1392 (1949) ("The Court in its construction of the constitutional provision has been careful not to reduce the concept of `just compensation' to a formula.").
[19] United States v. Fuller, 409 U.S. 488, 490, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973) (internal citation omitted).
[20] Cors, 337 U.S. at 332, 69 S.Ct. 1086 ("The Court in an endeavor to find working rules that will do substantial justice has adopted practical standards...."); United States v. Miller, 317 U.S. 369, 375, 63 S.Ct. 276, 87 L.Ed. 336 (1943) ("Courts have had to adopt working rules in order to do substantial justice in eminent domain proceedings.").
[21] Green Bay Broad. Co. v. Redev. Auth., 116 Wis.2d 1, 12, 342 N.W.2d 27 (1983).

This court modified the Green Bay Broadcasting opinion on a motion for reconsideration. See 119 Wis.2d 251, 349 N.W.2d 478 (1984). The modifications are not germane to the issue presently on review.
[22] Maxey, 94 Wis.2d at 401, 288 N.W.2d 794 ("[C]ondemnation awards should be based on the value of the property as a whole as if there were only one owner, and it is only after there is a determination of the taken property's total value that it is apportioned among the various interests in the property."); 4 Nichols, supra note 3, § 13.01[16] (stating that the unit rule applies "when there are different interests or estates in the property acquired by condemnation" and that "[p]ursuant to the unit rule, the proper course is to determine the entire compensation to be awarded as though the property belonged to one person and then apportion this sum among the different parties according to their respective rights").
[23] 4 Nichols, supra note 3, § 12.05[1] ("The public pays what the land is worth, and the amount so paid is to be divided among the various claimants, according to the nature of their respective elements."); Green Bay Broad. Co., 116 Wis.2d at 11, 342 N.W.2d 27 (same; quoting Nichols on Eminent Domain).
[24] Milwaukee & Suburban Transp. Corp. v. Milwaukee County, 82 Wis.2d 420, 449-50, 263 N.W.2d 503 (1978). See also United States v. 6.45 Acres of Land, 409 F.3d 139, 147 (3d Cir.2005).
[25] Milwaukee & Suburban Transp. Corp., 82 Wis.2d at 449-50, 263 N.W.2d 503.
[26] Green Bay Broad. Co., 116 Wis.2d at 11, 342 N.W.2d 27 (citing Milwaukee & Suburban Transp. Corp., 82 Wis.2d at 448, 263 N.W.2d 503). See also Hoekstra v. Guardian Pipeline, LLC, 2006 WI App 245, ¶ 5, 298 Wis.2d 165, 726 N.W.2d 648; Appleton Water Works Co. v. R.R. Comm'n of Wis., 154 Wis. 121, 142 N.W. 476 (1913).
[27] Johnston, supra note 5, at 302.
[28] Nebraska v. United States, 164 F.2d 866, 869 (8th Cir. 1947).

For a general discussion of cases determining just compensation for the condemnation of property held in different estates or interests, see Are Different Estates or Interests in Real Property Taken Under Eminent Domain to Be Valued Separately, or Is Entire Property to Be Valued as a Unit and the Amount Apportioned Among Separate Interests, 69 A.L.R. 1263 (1930) (supplemented by 166 A.L.R. 1211).
For a general discussion of cases determining the compensation due to a lessee for the taking or damaging of a leasehold interest in property, see Eminent Domain: Measure and Elements of Lessee's Compensation for Condemnor's Taking or Damaging of Leasehold, 17 A.L.R.4th 337 (1982).
[29] See, e.g., Brief and Appendix of the City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the United States Redevelopment Authority-Appellant at 15 ("[T]he `unit rule' may be utilized provided that [it does] not deprive a tenant of its right to be fully compensated for the value of its leasehold.").
[30] See 4 Nichols, supra note 3, § 12.05[2] (contrasting the "rule of separate valuation" to the unit rule (also sometimes referred to as the undivided fee rule)); Johnston, supra note 5, at 310-19 (contrasting the rule of "independent valuation of divided interests" to the unit rule; arguing that the independent valuation rule is consistent with the position that condemnors must indemnify property owners in order to provide just compensation).
[31] See, e.g., City of Baltimore v. Latrobe, 101 Md. 621, 61 A. 203, 206 (1905) ("We say that because each is entitled under the Constitution to be compensated in damages for the amount of his interest taken, and, if it be true that the values of the two interests are more than what the lots would be worth if owned by one person, the necessities of the case require an apparent exception to the general rule ... as to what the condemning party must pay."); State ex rel. McCaskill v. Hall, 325 Mo. 165, 28 S.W.2d 80, 82 (1930) ("There may be instances in which, owing to exceptional circumstances, the damages to the various interests when added together exceed the value of the property as a whole; in such case the particular interests should of course be separately appraised, because the owner of each is entitled to be compensated in damages for the amount of his interest taken." (citing Latrobe)); State v. Platte Valley Pub. Power & Irrigation Dist., 147 Neb. 289, 23 N.W.2d 300, 307-08 (1946) ("The measure of compensation to each owner must be that which he has lost.... [T]hose courts which have held that the sum of the separate values of the divided interests may not exceed the value of the unencumbered whole have at that point abandoned the rule that the measure is what has the owner lost, and applied the rule that the measure is what has the taker gained."); Wilson v. Fleming, 239 Iowa 718, 31 N.W.2d 393, 401-02 (Iowa 1948) (adopting Platte Valley Pub. Power & Irrigation Dist.); People ex rel. Dep't of Pub. Works v. Lynbar, Inc., 253 Cal.App.2d 870, 879, 62 Cal.Rptr. 320 (1967) ("The question to be answered in this case is, of what does the whole really consist, for which payment is to be made by the condemnor in one lump sum...? It seems to us that this whole must be the total of what the various involuntary sellers have to sell and not the undivided fee which the condemnor is seeking to acquire."); State Highway Dep't v. Thomas, 115 Ga.App. 372, 154 S.E.2d 812, 816 (1967) ("[W]here there are separate interests to be condemned, the jury, in arriving at just and adequate compensation, is not only authorized but required to consider the value which the thing taken has to the respective owners of the interests being condemned. If just and adequate compensation to the owners of the various interests in the land being condemned requires that the total compensation exceed the value of the land, this presents no difficulty....").

See also 4 Nichols, supra note 3, § 12.05[2] ("It has ... been intimated that where the undivided fee rule operates to the prejudice of the interest of the condemnee it might be considered unconstitutional." (citing Latrobe)).
[32] See, e.g., United States v. 6.45 Acres of Land, 409 F.3d 139, 141, 147-49 (3d Cir. 2005) (agreeing with the United States that the district court had erred in failing to apply the unit rule; concluding that the district court's error was not harmless because it was "quite likely that the sum of the District Court's independent awardsits assessment of `the value of the separate interests'substantially exceeded the value of the whole"); United States v. 131.68 Acres of Land, 695 F.2d 872, 875 (5th Cir.1983) ("[T]he division of a fee into separate interests cannot increase the amount of compensation that the condemnor has to pay for the taking of the fee."); Nebraska v. United States, 164 F.2d 866, 868 (8th Cir.1947) ("The [unit] rule manifestly is not without hardships in practical operation, but nevertheless the guarantee of the Fifth Amendment is regarded as being satisfied generally where the cash value of property taken in fee is substituted for it and the cash is allocated or apportioned among the respective estates or interests on the basis of their relative values."); County of Clark v. Sun State Props., Ltd., 119 Nev. 329, 72 P.3d 954, 958-60 (2003) (stating that under the undivided-fee rule, "the division of a fee into separate interests cannot increase the amount of compensation that the condemnor has to pay for the taking of the fee"; concluding that a Nevada statute codified the undivided fee rule, which is consistent with the constitution); Harco Drug, Inc. v. Notsla, Inc., 382 So.2d 1, 6 (Ala. 1980) ("The total award stands in place of the land, and the owners of each interest may recover out of the award the same proportionate interest which they had in the land condemned. ... [W]here, as appears to be the case here, the total award is inadequate to fully compensate both the lessee and lessor, the inadequacy, or loss, must be shared by both the lessee and lessor according to their proportionate interests in the estate."); Hughes v. City of Cincinnati, 175 Ohio St. 381, 195 N.E.2d 552, 556 (1964) ("Undoubtedly, defendant city should only have to pay the value of the land appropriated, even though that value may be less than the aggregate values of the interests in that land."); State ex rel. Highway Comm'n v. Burk, 200 Or. 211, 265 P.2d 783, 798-800 (1954) (holding that although the constitution may not require the valuation of condemned property to be in a lump sum, "[t]he very great weight of authority establishes that the constitution permits valuation in that manner"; refusing to recognize "any rule that the separate amounts apportioned to the owners of different interests may exceed the market value of the whole"); Cornell-Andrews Smelting Co. v. Boston & Providence R.R. Corp., 209 Mass. 298, 95 N.E. 887, 889 (1911) ("[N]o contracts between the owners of different interests in the land can affect the right of the government to take the land for public use, or oblige it to pay by way of compensation more than the entire value of the land as a whole." (citation omitted)); J.J. Newberry Co. v. City of E. Chicago, 441 N.E.2d 39, 43 (Ind.Ct.App. 1982) ("Newberry cites several cases from other jurisdictions in support of the proposition that the combined value of a leasehold interest and a reversionary interest may exceed the fair market value of the property as a whole. However, this Court need look no further than the unambiguous directives of the Indiana Supreme Court which stated: `For the purposes of condemnation proceedings, the value of all the interests or estates in a single parcel of land cannot exceed the value of the property as a whole, and that when the value of the property as a unit is paid to the various owners, or into court for them, the constitutional requirements are fully met....'" (quoting State v. Montgomery Circuit Court, 239 Ind. 337, 157 N.E.2d 577, 578 (1959))); New Jersey Sports & Exposition Auth. v. Borough of E. Rutherford, 137 N.J.Super. 271, 348 A.2d 825, 829-30 (Law Div. 1975) (noting that some jurisdictions recognize an exception to the unit rule "when the aggregate value of the separate interests exceeds the value of the unencumbered fee"; holding that the New Jersey courts do not recognize such an exception); Frankfurt v. Texas Turnpike Auth., 311 S.W.2d 261, 267 (Tex.Civ.App.1958) ("[T]he value of the property taken is all that the condemnor must pay, and this value cannot be increased by any contracts or distribution among the different persons owning interests in it; ... the sum of all the parts can not exceed the whole.").
[33] Green Bay Broad. Co. v. Redev. Auth. of Green Bay, 116 Wis.2d 1, 11, 342 N.W.2d 27 (1983) (emphasis added).
[34] See City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the U.S. v. Redev. Auth. of Milwaukee, 2008 WI App 24, ¶ 15, 307 Wis.2d 518, 746 N.W.2d 536.
[35] See Ira Levin, The Stepford Wives (1972), in which robots are preferred to human beings.
[36] The dissent incorrectly asserts that this court has recognized exceptions to the unit rule in Luber v. Milwaukee County, 47 Wis.2d 271, 177 N.W.2d 380 (1970); Maxey v. Redev. Auth. of Racine, 94 Wis.2d 375, 288 N.W.2d 794 (1980); and Green Bay Redev. Auth. v. Bee Frank, Inc., 120 Wis.2d 402, 355 N.W.2d 240 (1984). See dissent, ¶¶ 112-120.

The Luber decision relates to an owner's loss of rental income resulting from an impending taking and does not mention the unit rule. Maxey held in relevant part that a lessee of property may be entitled to compensation in a takings case and that just compensation is determined according to the unit rule. See Maxey, 94 Wis.2d at 400-01, 288 N.W.2d 794. The Bee Frank case held that the unit rule is not applicable "in determining entitlement to litigation expenses [under Wis. Stat. § 32.28(3)]," Bee Frank, 120 Wis.2d at 414, 355 N.W.2d 240, and did not address the manner of determining just compensation under the constitution.
[37] Bauman v. Ross, 167 U.S. 548, 570, 17 S.Ct. 966, 42 L.Ed. 270 (1897). See also United States v. 564.54 Acres of Land, 441 U.S. 506, 512, 99 S.Ct. 1854, 60 L.Ed.2d 435 (1979) (stating that question of just compensation as follows: "What compensation is `just' both to an owner whose property is taken and to the public that must pay the bill?") (quoting United States v. Commodities Trading Corp., 339 U.S. 121, 123, 70 S.Ct. 547, 94 L.Ed. 707 (1950)).
[38] See Green Bay Broad. Co. v. Redev. Auth. of Green Bay, 116 Wis.2d 1, 11, 342 N.W.2d 27 (1983) ("[W]hen a tract of land is taken by eminent domain, as the land itself is taken by a paramount title rather than the separate estates of different persons having interests in the land, the compensation awarded is for the land itself. ... The public pays what the land is worth. ..." (quoting Nichols on Eminent Domain)); United States v. 499.472 Acres of Land, 701 F.2d 545, 549 (5th Cir.1983) (stating that the unit rule is "[c]onsistent with th[e] theory ... that the government should not have to pay more for the property than it is worth").

See also Walgreen Co. v. City of Madison, 2008 WI 80, ¶ 48, 311 Wis.2d 158, 752 N.W.2d 687 (explaining that when the value of land is assessed for tax purposes, "[a] lease never increases the market value of real property rights to the fee simple estate. Any potential value increment in excess of a fee simple estate is attributable to the particular lease contract, and even though the rights may legally `run with the land,' they constitute contract rather than real property rights." (quoting Appraisal Institute, The Appraisal of Real Estate 473 (12th ed. 2001))).
[39] See Wis. Mall Props., LLC v. Younkers, Inc., 2006 WI 95, ¶ 26, 293 Wis.2d 573, 717 N.W.2d 703 ("[C]omplete condemnation of a property terminates a lease attached to that property.").
[40] Consequential or incidental damages are excluded from eminent domain valuation cases. See, e.g., Rotter v. Milwaukee County Expressway & Transp. Comm'n, 72 Wis.2d 553, 562-63, 241 N.W.2d 440 (1976); City of Janesville v. CC Midwest, Inc., 2007 WI 93, ¶ 17 n. 16, ¶ 21, 302 Wis.2d 599, 734 N.W.2d 428 (Roggensack, J., lead op.).

See also United States v. Petty Motor Co., 327 U.S. 372, 377-78, 66 S.Ct. 596, 90 L.Ed. 729 (1946) ("[E]vidence of loss of profits, damage to good will, the expense of relocation and other such consequential losses are refused in federal condemnation proceedings.").
[41] Walgreen Co., 311 Wis.2d 158, ¶ 3, 752 N.W.2d 687.
[42] Id., ¶¶ 65-66.
[43] Brief and Appendix of the City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the United States Plaintiff-Appellant at 16.

See also Walgreen Co., 311 Wis.2d 158, ¶ 97 n. 9, 752 N.W.2d 687 (Abrahamson, C.J., concurring) ("If the rent and/or terms of the lease are favorable to the tenant (or lessee), the value of the leased fee interest will usually be less than the value of the fee simple interest, resulting in a positive leasehold interest." (quoting Appraisal Institute, The Appraisal of Real Estate 82 (12th ed. 2001))).
[44] Wis. Mall Props., 293 Wis.2d 573, ¶ 26, 717 N.W.2d 703.
[45] Id.

In Maxey, 94 Wis.2d at 383, 288 N.W.2d 794, although the lease between Maxey and the lessors provided that Maxey's interest in the lease terminated upon the taking of the property, the court concluded that the lease provision terminated the liabilities of the lessor and lessee but did not forfeit Maxey's right to share in the compensation award. A lease may bar a lessee from sharing in the proceeds of a condemnation award. Such a condemnation clause is a negotiated apportionment of a risk between a lessor and a lessee. Van Asten v. Dep't of Transp., 214 Wis.2d 135, 138, 571 N.W.2d 420 (Ct.App. 1997).
[46] Wis. Mall Props., 293 Wis.2d 573, ¶ 34, 717 N.W.2d 703.
[47] See Wis. Mall Props., 293 Wis.2d 573, ¶ 30, 717 N.W.2d 703 ("[M]ost conflicts that condemnation imposes on the landlord and tenant can be avoided by proper planning. In this regard, the most important tool is educated negotiation and drafting of the lease contract." (quoting 7A Nichols on Eminent Domain § 11.06[1][a])).
[48] Milwaukee City Post #2874 Veterans of Foreign Wars of the U.S. v. Maharishi Vedic University, Inc., No.2006AP1039, unpublished slip op., ¶ 5, 2007 WL 610900 (Wis.Ct.App. March 1, 2007).

The court of appeals' decision in this unpublished case constitutes a fact that the Redevelopment Authority contends is relevant to the case presently on review. We cite to the court of appeals' unpublished opinion in order to examine the Redevelopment Authority's factual claims. We do not cite to the opinion as precedent.
[49] Milwaukee City Post #2874 Veterans of Foreign Wars of the U.S. v. Maharishi Vedic University, Inc., No.2006AP1039, unpublished slip op., ¶¶ 15, 21, 2007 WL 610900 (Wis.Ct. App. Mar. 1, 2007).
[50] Id., ¶¶ 16-18.
[51] Id., ¶ 22.
[52] Cornell-Andrews Smelting Co. v. Boston & Providence R.R. Corp., 209 Mass. 298, 95 N.E. 887, 889 (1911).
[53] Boston Chamber of Commerce v. City of Boston, 217 U.S. 189, 195, 30 S.Ct. 459, 54 L.Ed. 725 (1910).

Several Wisconsin cases repeat the language in Boston Chamber of Commerce stating that just compensation is based on what the owner has lost, not what the condemnor has gained. None of these cases involves condemnation of property with multiple owners or the unit rule. See Volbrecht v. State Highway Comm'n, 31 Wis.2d 640, 647, 143 N.W.2d 429 (1966) (holding that a jury instruction was in error insofar as it implied that "damages may be awarded for value created by the taking and its prospective use in the improvement. Just compensation is what the owner has lost, not what the condemnor has gained." (citing Nichols on Eminent Domain)); Besnah v. Fond du Lac, 35 Wis.2d 755, 758, 151 N.W.2d 725 (1967) (relating to an owner's loss in a partial taking case (citing Volbrecht)); Luber v. Milwaukee County, 47 Wis.2d 271, 279, 177 N.W.2d 380 (1970) (relating to an owner's loss of rental income resulting from an impending taking (quoting Volbrecht and citing Besnah)).
The court of appeals relied upon the language in Boston Chamber of Commerce in holding for the VFW in the present case. See City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the U.S. v. Redev. Auth. of Milwaukee, 2008 WI App 24, ¶ 26, 307 Wis.2d 518, 746 N.W.2d 536.
[54] Boston Chamber of Commerce, 217 U.S. at 194, 30 S.Ct. 459.
[55] Id. at 195, 30 S.Ct. 459.
[56] Id. at 194, 30 S.Ct. 459.
[57] Id. at 195, 30 S.Ct. 459.
[58] See Brown v. Legal Found. of Wash., 538 U.S. 216, 224-25, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003).
[59] Id. at 224-25, 123 S.Ct. 1406.
[60] Id.
[61] Id. at 235, 123 S.Ct. 1406.
[62] Id.
[63] Id. at 236, 123 S.Ct. 1406.
[64] Id. (quoting Boston Chamber of Commerce, 217 U.S. at 195, 30 S.Ct. 459).

Another recent decision of the United States Supreme Court, City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 710, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999), also has quoted Justice Holmes' statement in Boston Chamber of Commerce. City of Monterey, however, was not a just compensation case. The issue before the Court was "whether it was proper for the District Court to submit the question of liability on Del Monte Dunes' regulatory takings claim to the jury." City of Monterey, 526 U.S. at 707, 119 S.Ct. 1624.
Older United States Supreme Court cases quoting Holmes' aphorism but shed no light on its meaning and give no hint as to how it should be applied.
[65] Brown v. Legal Found. of Wash., 538 U.S. at 240 n. 11, 123 S.Ct. 1406.
[66] Boston Chamber of Commerce v. City of Boston, 217 U.S. 189, 194, 30 S.Ct. 459, 54 L.Ed. 725 (1910).
[67] 4 Nichols, supra note 3, § 12.05[2].

See also United States v. 6.45 Acres of Land, 409 F.3d 139, 148 (3d Cir.2005) (characterizing the Boston Chamber of Commerce decision as holding that "in a taking by the City of Boston, it was not unconstitutional for a commonwealth court to disregard the value of the unencumbered estate as a whole where there was a great disparity between the value of the unencumbered whole and the value of the estate in its actual state of title").
[68] Johnston, supra note 5, at 311.

Professor Johnston, who argues for separate valuation of long-term leasehold interests, explains that the language in Boston Chamber of Commerce should not be interpreted to mean that the condemnor must fully compensate property owners on the basis of their loss:
This passage [in Boston Chamber of Commerce] has occasioned considerable confusion. Out of context, the last sentence could be interpreted as an assertion that the Constitution incorporates the indemnity approach [to determining just compensation]. But this interpretation is completely inconsistent with the Court's oft-repeated endorsement of the market value approach.
Id. (footnote omitted).
[69] United States v. 564.54 Acres of Land, 441 U.S. 506, 511, 99 S.Ct. 1854, 60 L.Ed.2d 435 (1979) (quoting Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934)).
[70] 564.54 Acres of Land, 441 U.S. at 512, 99 S.Ct. 1854.
[71] See United States v. 50 Acres of Land, 469 U.S. 24, 30, 105 S.Ct. 451, 83 L.Ed.2d 376 (1984) (stating that when property is taken from a private owner, "the possibility that the cost of a substitute facility exceeds the market value of the condemned parcel would not justify a departure from the market value measure."); 564.54 Acres of Land, 441 U.S. at 514, 99 S.Ct. 1854 ("[I]t is not at all unusual that property uniquely adapted to the owner's use has a market value on condemnation which falls far short of enabling the owner to preserve that use. ... Yet the Court has previously determined that nontransferable values arising from the owner's unique need for the property are not compensable, and has found that this divergence from full indemnification does not violate the Fifth Amendment." (citation omitted)).
[72] Professor Victor Goldberg et al. contend that Boston Chamber of Commerce is best understood as reflecting the "offsetting benefits" doctrine, under which the condemnor may offset benefits generated by the condemnation in determining the final amount of "just compensation" payable to the condemnee. They argue that "[b]ecause the public right-of-way [created by the City of Boston] was nearly as valuable to the Wharf Company as the private easement, the net result was to deny it all compensation." Victor P. Goldberg, Thomas W. Merrill & Daniel Unumb, Bargaining in the Shadow of Eminent Domain: Valuing and Apportioning Condemnation Awards Between Landlord and Tenant, 34 UCLA L.Rev. 1083, 1101 (1987). Thus, in the view of Professor Goldberg et al., the Boston Chamber of Commerce decision demonstrates that "the offsetting benefits rule can be a complicating factor in determining the correct measure of just compensation." Id. at 1102. Professor Goldberg et al. further conclude that "correctly analyzed, Boston Chamber of Commerce does not establish an exception to the undivided fee rule." Id.
[73] The dissent asserts that "the City and the Redevelopment Authority together contributed to the decline of the underlying real property by their actions and inactions and by the lengthy delay between the condemning authority's announced intention to take the property and the filing of the condemnation petition." Dissent, ¶ 135.

The dissent's assertion is a finding of fact made improperly by the dissent rather than by the circuit court. Moreover, the dissent's finding of fact has no basis in the record in the present case.
[1] 6 The Works of John Adams 280 (Charles Francis Adams ed., 1850).
[2] "One great obj[ective] of Gov[ernment] is personal protection and the security of Property." 1 The Records of the Federal Convention of 1787, 302 (Max Farrand ed., Yale Univ. Press rev. ed. 1937 (quoting Alexander Hamilton)); see also Adam Smith, Lectures on Jurisprudence 1 (Ronald L. Meek et al. eds., Oxford University Press 1978) (1762-63)

The first and chief design of every system of government is to maintain justice: to prevent the members of society from encroaching on one another's property, or seizing what is not their own. The design here is to give each one the secure and peaceable possession of his own property.
[3] U.S. Const. art. I, § 10, cl. 1.
[4] Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 160, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980); Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 122, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); Chicago, Burlington & Quincy R.R. Co. v. Chicago, 166 U.S. 226, 239, 17 S.Ct. 581, 41 L.Ed. 979 (1897).
[5] Wis. Const. art. I, §§ 12 ("No ... law impairing the obligation of contracts[] shall ever be passed. ..."), 13 ("The property of no person shall be taken for public use without just compensation therefor.").
[6] The parcel of land at issue remains vacant and undeveloped after six years of ownership by the Redevelopment Authority. As a result, the parcel has yielded no tax revenue to local governments since it was condemned in 2001.
[7] rule requiring just compensation to each owner for that which is taken must be applied in all instances under our Constitution. [A]ny rule that may be laid down must itself be measured by the rule given in the Constitution, and any rule that so limits the damages in such case as that the result will be in fact less than just compensation for the injury suffered falls short of the constitutional measure.
State v. Platte Valley Pub. Power & Irrigation Dist., 147 Neb. 289, 23 N.W.2d 300, 312 (1946) (internal quotations omitted).
[8] See also majority op., ¶ 38 ("The constitutional requirement of just compensation cannot be reduced to a formula or expressed in inexorable rules." (citing United States v. Toronto, Hamilton & Buffalo Navigation Co., 338 U.S. 396, 402, 70 S.Ct. 217, 94 L.Ed. 195 (1949); United States v. Cors, 337 U.S. 325, 332, 69 S.Ct. 1086, 93 L.Ed. 1392 (1949))).
[9] See also 4 Nichols on Eminent Domain § 12.05[2] (3d ed. 2007)

The method of valuation based upon the undivided fee has been criticized where there was a great disparity between the value of the undivided fee and the aggregate value of the separate interests. Valuation of the separate interests, under such circumstances, has been held to be constitutional. It has, in fact, been intimated that where the [unit] rule operates to the prejudice of the interest of the condemnee it might be considered unconstitutional.
(Emphasis added.)
[10] There was no "condemnation clause" in the VFW's lease. Consequently, the leasehold interest of the VFW was not disqualified by contract from receiving all or part of any condemnation award.
[11] To understand the significance of Green Bay Redevelopment Authority v. Bee Frank, Inc. (Bee Frank II), 120 Wis.2d 402, 355 N.W.2d 240 (1984), one must consider the case in relation to the analysis employed by the court of appeals in Green Bay Redevelopment Authority v. Bee Frank, Inc. (Bee Frank I), 112 Wis.2d 1, 331 N.W.2d 840 (Ct.App. 1983). There, the court of appeals stated the following:

In eminent domain proceedings, Wisconsin has adopted the "unit rule of damages" approach for improved real estate, which requires that the real estate be valued as a single entity. "Buildings and improvements are not valued in isolation from the market value of the land, but are considered only to the extent that they enhance the value. The proper measure of damages is therefore the market value of the land with the improvements on it. ..." Milwaukee & Suburban Transport Corp. v. Milwaukee County, 82 Wis.2d 420, 448-49, 263 N.W.2d 503, 518 (1978). A condemnation award should be based on the property's value as a whole as if there were only one owner, and it is only after the appropriated property's total value is determined that the award is apportioned among the various interests in the property.
. . . .
In Milwaukee & Suburban Transport, the court also approved an instruction similar to Wisconsin Civil Jury Instruction 8135 used in eminent domain proceedings involving buildings with improvements. Both instructions require the jury to value the property as a single unit comprised of the various components. ... The first question asked for the fair market value of the property taken. The remaining questions merely asked what calculations had gone into the jury's determination of overall value.
. . . .
The State of New York, which has occasionally criticized the unit rule, nevertheless acknowledges that there is no dispute "that a separate award cannot be made for fixtures if what are claimed to be fixtures have become an integral part of the real property." Marraro v. State, 12 N.Y.2d 285, 239 N.Y.S.2d 105, 189 N.E.2d 606, 609 (1963). We agree. An appropriation of land is an appropriation of everything annexed to the land, whether classified as buildings or fixtures. Although the value of fixtures must be included in determining the appropriated property's total value, when a fixture has lost its identity by becoming a structural part of the building, it can no longer become the subject of a separate award.
Bee Frank I, 112 Wis.2d at 5-7, 331 N.W.2d 840 (second emphasis added) (internal footnote omitted).
The court of appeals added in a footnote:
It appears questionable under a § 32.06 condemnation proceeding, however, whether a tenant who owns immovable fixtures in a building is entitled to a separate hearing before the commission or circuit court. It also appears questionable whether a non-titleholder to the property, such as a tenant, is ever entitled to litigation expenses in a § 32.06 condemnation proceeding.
Id. at 8 n. 3, 331 N.W.2d 840.
[12] Majority op., ¶ 78.
[13] "The generally accepted measure of compensation for such a taking is the fair market value of the leasehold for the unexpired lease term. ... A lessee is, therefore, entitled to a sum which will adequately compensate it for any pecuniary loss resulting from the taking." 4 Nichols on Eminent Domain, supra, § 13.08[6] (internal footnotes omitted).
[14] The majority opinion implicitly accepts that, if the VFW's property were valued separately according to this method, there would be some fair market value to the VFW's leasehold that would need to be compensated. See majority op., ¶ 22 n. 10 ("[W]e accept for purposes of our review the VFW's contention that its leasehold interest had value.").